*354 OPINION OF THE COURT
Elizabeth W. Pine, J.
Before the court are cross applications concerning the custody of the four-year-old child of the parties, who are recently divorced. The initial petition of the father requests that this court enforce the provisions of a decree of divorce entered in Puerto Rico which, on the mother’s default, awarded legal custody of the child to the father on September 8, 1978. Respondent mother cross-moves for legal custody of the child, child support, and counsel fees in the amount of $300.
The pertinent facts are briefly set out here. The parties were married in a civil ceremony held in Puerto Rico on July 21, 1972. The infant who is the subject of this proceeding was born to the parties on November 28, 1973.
For the nearly five years since his birth, the infant appears to have resided continuously with his mother. In February of 1978, the mother moved from the marital residence in Puerto Rico to Rochester, New York, taking the child with her. For the last eight-month period since the mother and child’s departure, the father has continued to reside in Puerto Rico.
The initial efforts of each parent to obtain legal custody of the child — by legal proceedings in his respective jurisdiction— each proved unsuccessful. In late April of 1978, the mother received a notice summoning her to appear at a conciliation hearing in the Superior Court of Bayamón, Puerto Rico, on May 4, 1978. She responded, by letter the following day addressed to the Secretary of the Superior Court, stating that although she did wish to be divorced, she also wanted legal custody of her child; she stated that she was financially unable to travel to Puerto Rico to appear in the legal proceeding commenced by the father, and that she would be unable to appear unless the father were to pay her necessary expenses.
On May 4, 1978, the return date set in the initial notice directed to the mother, the court reserved decision with respect to the father’s application, allowing him 15 days to submit to the court a marriage certificate admissible in evidence to establish the marriage of the parents.[1] On June 23, 1978, the father having failed to comply with the court’s direction of May 4, 1978 for nearly two months, the Superior Court of Bayamón entered an order dismissing the father’s claim for relief. The mother was so notified.
*355 In July of 1978, the mother attempted to commence a proceeding in Rochester, New York, to obtain temporary legal custody of the child. For reasons which do not fully appear from the papers before the court, the wife was unable to effect service upon the husband in that matter, and her action appears to have been discontinued or abandoned.
On August 28, 1978, an order was signed reopening the original proceeding in Puerto Rico. This order, however — unlike the original notice of conciliation proceedings the mother received in April — failed to notify the mother of a date on which to appear. Eleven days later, on September 8, 1978, the mother not having appeared in the proceeding in Puerto Rico, an order was entered by the Superior Court of Bayamón granting the father both a judgment of divorce and legal custody of the child — a child who had resided with the mother in Rochester, New York, at all times during that proceeding.
The father thereupon came to New York and commenced this habeas corpus proceeding for custody of the child based upon the order of the Superior Court of Bayamón, Puerto Rico. The mother cross-moved for custody. On September 27, 1978, this court made an ordér granting temporary custody to the mother, with visitation rights to the father, pending the outcome of the application and cross application before the court.
I. THE FATHER’S APPLICATION
The application of the father rests upon the decree of the Superior Court of Bayamón dated September 8, 1978, awarding custody of the child to him by default, 11 days after the court’s signature of an order notifying the mother of reopening of the case on August 28, 1978.
Prior to the adoption of the Uniform Child Custody Jurisdiction Act,[2] it was unquestionably the rule in New York that this court would proceed to its own custody determination with respect to a child within the borders of this State, and that the court was not bound by a foreign decree. (See, e.g., Bachman v Mejias, 1 NY2d 575.)
Since the time of the Bachman decision, however, a growing number of State Legislatures — including our own — have carefully re-examined the issues relating to jurisdiction over inter *356 state and international child custody disputes. The Uniform Child Custody Jurisdiction Act (UCCJA) was adopted in this State, and in others, to curtail the "childnapping” and forum shopping which, in the long run, had generated such instability for children in the past. Specifically — within limitations now articulated in the UCCJA — the act was intended to overcome the result which earlier obtained because "the full faith and credit clause does not apply to custody decrees and the responsibility of courts for the welfare of infants transcends the rule of comity”. (Obey v Degling, 37 NY2d 768, 770; see Governor’s mem on approving L 1977, ch 493, NY Legis Ann, 1977, p 180, citing Obey, supra.)
In order to effectuate this change, the UCCJA contains new provisions generally requiring this court to recognize and to enforce custody decrees of other States (see Domestic Relations Law, §§ 75-m — 75-p). Moreover, the UCCJA expressly defines the Commonwealth of Puerto Rico as a "State” to which that act’s provisions apply. (Domestic Relations Law, § 75-c, subd 10.)
This being so, this court is required to recognize and to enforce the decree of the Superior Court of Bayamón, provided either that the court "assumed jurisdiction under statutory provisions substantially in accordance with [the UCCJA]” or that its decree was "made under factual circumstances meeting the jurisdictional standards of [the UCCJA]”. (Domestic Relations Law, § 75-n [recognition of out-of-State custody decrees].)
However, on the basis of this statutory test, the UCCJA does not require this court to recognize and enforce the September 8, 1978 default decree of the Superior Court of Bayamón. Counsel for the father expressly conceded to this court that Puerto Rico has not adopted the UCCJA, and the court’s research has not identified any substantially similar provisions in the law of Puerto Rico.[3] In addition, the default *357 custody determination of the Superior Court of Bayamón, pursuant to its notice of reopening signed 11 days earlier, was not made under factual circumstances meeting the jurisdictional standards of the UCCJA. First, the mother does not appear to have received notice and opportunity to be heard within the meaning of the UCCJA.* **[4] Moreover, as of the time the proceedings were recommenced by the court’s order of August 28, 1978, the court’s reassumption of jurisdiction over the proceeding was not made under factual circumstances meeting the jurisdictional requirements of the UCCJA.[5]
The foregoing means only that the law does not require this court to recognize and enforce the order of the Superior Court of Bayamón, and makes applicable to this proceeding the provisions of subdivision (4) of section 240 of the Domestic Relations Law which require this court to give "such direction, between the parties, for the custody, care, education and maintenance of any child of the parties, as, in the court’s discretion, justice requires, having regard to the circumstances *358 of the case and of the respective parties and to the best interests of the child.” (See, generally, Domestic Relations Law, § 70 [habeas corpus for child detained by parent].)
The petition of the father requesting that this court enforce the order of the Superior Court of Bayamón, without making further inquiry into the circumstances of this case, is accordingly denied.
II. THE MOTHER’S APPLICATION
1. CUSTODY
By cross application, the mother seeks an order awarding her legal custody of the child who has resided with her since his birth. While, under the circumstances of this case, this court is not required to enforce the custody decree of the Superior Court of Bayamón, the cross application of the mother need not be treated as unrelated to that prior proceeding, and will accordingly be treated as an application to modify the custody decree made upon her default on September 8, 1978. (See Domestic Relations Law, § 75-o [modification of custody decree of another State].)
This court may properly determine a petition to modify the prior decree concerning the child because the court which rendered the original decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with the provisions of the UCCJA[6] (Domestic Relations Law, § 75-o, subd 1, par [1]), and this court does have jurisdiction. (See, e.g., Domestic Relations Law, § 75-d, subd 1, pars [a], [b].)
Moreover, the instant case is not one involving a parent who has "lawlessly spirited the child” out of the original jurisdiction of residence. (Cf. Matter of Nehra v Uhlar, 43 NY2d 242.) In February, 1978, when the mother moved to Rochester with the child, there was no order determining the custody of this child. The mother, in the instant proceeding, has neither removed the child from the physical custody of another person then entitled to custody, nor improperly retained the child after a visit or other temporary relinquishment of physical custody. This being the case, the UCCJA does not require this court to refuse to exercise its jurisdiction to modify the custody decree of the Superior Court of Bayamón (Domestic Relations Law, § 75-i, subd 2). Further, under the *359 circumstances of this case, this court does not decline to exercise jurisdiction, as a matter of discretion. (See, generally, Domestic Relations Law, §§ 75-h, 75-i, subd 2.)
This court will accordingly hear and determine the mother’s application for custody as an application to modify the decree of the Superior Court of Bayamón. In accordance with the UCCJA, and pursuant to sections 75-o (subd 2), 75-u and 75-v of the Domestic Relations Law, this court shall direct a request to the Superior Court of Bayamón for a certified copy of the court record, and each of the pleadings, orders, decrees, social studies or investigations and other documents pertaining to that court’s determination dated September 8, 1978.
The father shall be given at least 20 days’ notice of hearing in this matter, in accordance with the provisions of sections 75-e and 75-f of the Domestic Relations Law. The temporary order of this court continues in effect pending further order.
2. CHILD SUPPORT
Although the father had resources to commence this proceeding and to accompany his counsel from Puerto Rico, the court currently lacks information concerning his finances sufficient to determine whether an order of child support would be appropriate, or to determine a suitable level of support. The mother’s request for child support is denied pending a hearing, without prejudice to further application for a retroactive order of support.
3. COUNSEL FEES
The mother’s application for $300 counsel fees is denied without prejudice pending a hearing.
Since there may be extensive further proceedings in this matter, the pro hac vice admission of the husband’s present counsel will not be extended beyond service of the judgment and order on the initial matters herein determined, together with notice of entry. Accordingly, pursuant to CPLR 321 (subd [c]), the court directs that notice to appoint an attorney regularly admitted to practice in the courts of this State be served upon the father, together with the judgment and order entered on this decision, by mailing the same to the office address of the father’s present counsel.

. This information appears from the court’s subsequent order of June 23, 1978.

. (Domestic Relations Law, § 75-a et seq., added by L 1977, ch 493, eff Sept. 1, 1978.)

. Counsel for the father asserts that the family rights and obligations of citizens of Puerto Rico — wherever such citizens may reside — remain forever subject to the laws of Puerto Rico. The section of the Civil Code of Puerto Rico relied upon by the father is section 9 of title 31 of the Laws of Puerto Rico Annotated, which provides that: "The laws relating to family rights and obligations, or to the status, condition and legal capacity of persons, shall be binding upon the citizens of Puerto Rico, although they reside in a foreign country.” The court observes that this provision, insofar as it may be read as governing child custody determinations, is not a jurisdictional prerequisite substantially in accordance with the UCCJA within the meaning of the Domestic Relations Law (§ 75-o, subd 1, par [1]).
Had Puerto Rico adopted the UCCJA, or a substantial equivalent, the Superior *357 Court of Bayamón might have had a constructive alternative to proceeding to judgment against the mother by default in a proceeding commenced in a jurisdiction to which she and the child were absent not only during its pendency but even before its inception. The UCCJA would have facilitated the entry of an initial decree (Domestic Relations Law, § 75-c, subd 6) in a proceeding, either in Puerto Rico or in New York, in which the best interest of the child could be more fully explored. (See, e.g., Domestic Relations Law, § 75-h, subds 4-9.)

. Apart from the mother’s financial inability to appear in the proceeding in Puerto Rico, the mother was neither informed by the August 28 order, that any hearing would be held on September 8, nor given, in any event, the minimum 20 days’ notice required to be afforded a person outside the State under the UCCJA. (Domestic Relations Law, §§ 75-e, 75-f, subd 2.)

. (Domestic Relations Law § 75-d.) Puerto Rico was not only no longer the child’s "home state” (Domestic Relations Law, § 75-c, subd 5), but had not been for more than six months before the court reassumed jurisdiction over the proceeding it had earlier dismissed without reservation; the child, in fact, was already absent from Puerto Rico when the father made his initial unsuccessful application for custody. The Superior Court would accordingly not have had jurisdiction under the Domestic Relations Law (§ 75, subd 1, pars [a], [b]).
Since the New York courts would have had jurisdiction over this custody proceeding, the Superior Court would not have had jurisdiction under the Domestic Relations Law (§ 75-d, subd 1, par [b]).
Given not only the undesirability of making a custody determination in the absence of the child, but also the custodial parent’s financial inability to appear in the proceeding in Puerto Rico, the significant connections of the child with Puerto Rico were not such that it was in his best interest, within the meaning of the Domestic Relations Law (§ 75-d, subd 1, par [b]), for the Superior Court to assume jurisdiction over a proceeding in which the lifelong custodial parent would be exposed to an adverse determination by default.

. See n 3, supra.