YANIRA IVELISSE INFANTE DE ARCE, recurrida, *v.* VÍCTOR LUIS MONTALVO MULERO, peticionario.

*Número:* AC-2005-29          *Resuelto:* 23 de septiembre de 2005

*Isabel Ahmad Fuentes,* abogado de la parte peticionaria; *Grisel Yolanda Montalvo,* abogado de la parte recurrida.

## SENTENCIA

El peticionario, Víctor Luis Montalvo Mulero, y la recurrida, Yanira Infante de Arce, contrajeron matrimonio en Puerto Rico en 1991. De dicha unión procrearon una niña, quien en la actualidad cuenta con trece años de edad. La menor nació en Puerto Rico.

En diciembre de 1996, la señora Infante, quien para entonces vivía en Estados Unidos, presentó en Puerto Rico una demanda de divorcio. En abril de 1997 el Tribunal de Primera Instancia, Sala Superior de Bayamón, asumió jurisdicción y declaró "con lugar" la petición. La custodia y patria potestad de la menor le fue concedida a su madre. La sentencia dictada incorporó las estipulaciones acordadas por las partes que regulan la relación paterno-filial. La sentencia proveía para un plan de llamadas periódicas y visitas con el padre durante la época navideña y en el verano.

El 28 de julio de 2004, el señor Montalvo presentó en el pleito de divorcio una moción para que se encontrara a la señora Infante incursa en desacato por impedir las relaciones paterno-filiales. Además, consignó en el tribunal la

cantidad de ocho mil dólares en concepto de pensión alimenticia adeudada, para beneficio de la menor. La señora Infante se opuso a la moción presentada y adujo que el tribunal con jurisdicción era el de Florida, donde ella residía con la menor, y no los tribunales del Estado Libre Asociado de Puerto Rico.

Luego de celebrada una vista, el tribunal primario resolvió que conservaba jurisdicción para atender esta controversia y ordenó que la menor viajara a Puerto Rico a relacionarse con su padre.

Inconforme, la señora Infante acudió en alzada ante el Tribunal de Apelaciones. El foro apelativo resolvió que, en virtud de la ley federal conocida como *Parental Kidnapping Prevention Act* (P.K.P.A.), 28 U.S.C.A. sec. 1738A *et seq.*, la jurisdicción sobre este asunto la ostentan los tribunales del estado de la Florida, no los del Estado Libre Asociado de Puerto Rico. En virtud de ello, revocó al foro de instancia.

No conforme, el señor Montalvo acudió ante nosotros en solicitud de apelación y con una moción en auxilio de jurisdicción. El 17 de junio de 2005 dictamos una orden dirigida a la recurrida para que mostrara causa por la cual no debía revocarse la sentencia del foro intermedio. La señora Infante compareció oportunamente.

Evaluado los escritos presentados por las partes y atendido el recurso presentado como un *certiorari*, lo expedimos *y se dicta sentencia, revocando al Tribunal de Apelaciones. Se devuelve el caso al foro primario para que determine si al momento del divorcio del señor Montalvo y la señora Infante, Puerto Rico era el estado de residencia de la menor o que no hubiera en ese momento otro foro que cualificara como estado de residencia de la menor. Para ello, deberá determinar si al momento del divorcio de sus padres, la menor llevaba al menos seis meses residiendo ininterrumpidamente en Puerto Rico o si, por el contrario, la menor llevaba ese tiempo o más residiendo en Florida. De ser este último el caso, para efectos del P.K.P.A., el decreto original de divorcio no se conformó a sus requerimientos y por lo*

*tanto, en estos momentos, quien tiene jurisdicción en este caso es el estado de Florida.* A contrario sensu, *si Puerto Rico era el lugar de residencia de la menor cuando se decretó disuelto el matrimonio del señor Montalvo y la señora Infante, entonces quien tendría jurisdicción serían los tribunales de Puerto Rico.*

Finalmente, el segundo señalamiento de error no fue cometido. La enmienda *nunc pro tunc* solicitada por el peticionario al dictamen de divorcio original, no es una enmienda de forma por afectar los derechos sustantivos de las partes, por lo que no procede su solicitud como cuestión de derecho.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad, a la cual se le unieron el Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Rebollo López. La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita. "El Juez Asociado Señor Rivera Pérez disiente por entender que la jurisdicción sobre el caso de marras la tiene el estado de Florida por ser el 'estado de residencia' de la menor de edad por más de seis meses (varios años), de acuerdo con lo dispuesto por el *Parental Kidnapping Prevention Act*, 28 U.S.C.A 1738A".

(*Fdo.*) Aida Ileana Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Opinión de conformidad emitida por la Juez Asociada Señora Rodríguez Rodríguez, a la cual se unen el Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Rebollo López.

El caso de autos plantea si los tribunales de Puerto Rico mantienen jurisdicción, de acuerdo con el *Parental Kidna-*

*pping Prevention Act* (P.K.P.A.), para ordenar el cumplimiento de una determinación de custodia emitida en Puerto Rico en un procedimiento de divorcio, cuando la menor en cuestión reside hace varios años en el estado de Florida.

Entendemos que, bajo la cláusula de continuidad del P.K.P.A., un tribunal de Puerto Rico mantiene jurisdicción sobre un procedimiento de custodia a pesar de no ser el estado de residencia del menor, siempre y cuando el decreto original haya sido emitido de forma compatible con los parámetros de dicho estatuto y el tribunal no haya de otro modo perdido o renunciado a su jurisdicción.

## I

El Sr. Víctor Luis Montalvo Mulero (señor Montalvo o el padre) y la Sra. Yanira Ivelisse Infante de Arce (señora Infante o la madre) contrajeron matrimonio en Manatí, Puerto Rico, en junio de 1991. De dicha unión nació en Puerto Rico una niña, quien al momento cuenta con trece años de edad. Luego de varios años de matrimonio, el 23 de diciembre de 1996 la señora Infante, quien en ese momento vivía en Estados Unidos con su hija, presentó en nuestra jurisdicción una demanda de divorcio.(¹)

En abril de 1997 el Tribunal de Primera Instancia, Sala Superior de Bayamón, asumió jurisdicción sobre las partes, declaró "con lugar" la demanda y dictó sentencia de divorcio bajo la causal de separación.(²) El tribunal otorgó tanto la custodia como la patria potestad de la menor de edad a su madre, no empece constar en la minuta de la vista del juicio que la patria potestad sería compartida.

---

(¹) No surge claro de los documentos que obran en el expediente qué tiempo llevaban la señora Infante y la menor fuera de Puerto Rico al momento de presentar la demanda de divorcio. El señor Montalvo alega que a esa fecha llevaba aproximadamente un (1) año sin ver a su hija.

(²) Al momento de la sentencia de divorcio, el señor Montalvo residía en Bayamón, Puerto Rico, mientras que la señora Infante y la menor se encontraban domiciliadas en Orlando, Florida. Véase Apéndice, pág. 27.

Véase Apéndice, pág. 25. En la sentencia de divorcio se incorporaron las estipulaciones acordadas por las partes respecto a cómo se regiría la relación paterno-filial. Se estableció un plan de llamadas telefónicas periódicas y siete días de derecho de visitas con el padre en las épocas de verano y navidad. Además, se estipuló que el padre pagaría una pensión alimenticia consistente en doscientos veinticinco dólares mensuales.

Alega la señora Infante que el padre incumplió con las disposiciones antes transcritas, ya que no emitió pago alguno de pensión, no llamó a su hija ni procuró buscarla. Por su parte, el padre argumenta que desde que envió el primer cheque de pago de pensión, éste le fue devuelto por el correo federal. Aduce que la madre le ocultó su dirección, le devolvía sus cartas haciéndole creer que no vivía en esa dirección y cambió su número de teléfono para evitar la comunicación entre padre e hija. Todo parece indicar que desde que se dictó la sentencia de divorcio, el padre y su hija se comunicaron telefónicamente sólo en dos ocasiones.

Durante la época de verano de 2003, el padre supo que la menor se encontraba de vacaciones en Puerto Rico en casa de su abuela materna.(3) En esa ocasión se coordinaron varias visitas con sus familiares paternos, en las que la menor tuvo la oportunidad de compartir con su padre, abuelos y demás familiares. La menor, alegadamente, prometió a su padre que regresaría a visitarlo durante las próximas vacaciones. No obstante, reclama el padre que luego de esta fecha no volvió a saber de su hija.

Así las cosas, el 28 de julio de 2004 el señor Montalvo presentó ante el tribunal de instancia, dentro del mismo pleito de divorcio, una Moción de Consignación y Solicitud de Desacato por Relaciones Paterno-Filiales. En ésta informó su deseo de relacionarse con su hija, solicitó que se encontrara a la señora Infante incursa en desacato por im-

---

(3) Posteriormente, el padre se enteró que, desde que se decretó el divorcio, la menor pasaba todos los veranos en Puerto Rico en la casa de su abuela materna, donde también reside su hermano materno.

pedir las relaciones paterno-filiales y, además, informó que por desconocer la dirección de la menor procedía a consignar en el tribunal la cantidad de ocho mil dólares en concepto de pensión alimenticia para beneficio de la menor. Posteriormente, solicitó que la menor fuera enviada a Puerto Rico para el periodo navideño.

Por su parte, la madre se opuso. Adujo que ha residido junto a su hija en Florida en la misma dirección ininterrumpidamente desde que se decretó el divorcio y que el padre en seis años nunca hizo gestiones para relacionarse con la menor. Alegó que el repentino interés del señor Montalvo en relacionarse con su hija surgió a raíz del deseo expresado por su actual esposo de adoptarla. Finalmente, solicitó la desestimación de la acción presentada, ya que el tribunal con jurisdicción era el de Florida.

Luego de celebrar una vista de relaciones paterno-filiales a la que no compareció la madre, mas sí su representación legal, el tribunal de instancia emitió una Resolución el 22 de diciembre de 2004 en la que determinó que conservaba jurisdicción para atender el asunto. Reiteró el tribunal que las relaciones paterno-filiales debían cumplirse conforme a lo establecido en la sentencia de divorcio y que la señora Infante debía garantizar su cumplimiento. En vista de esto, ordenó que la menor viajara a Puerto Rico a pasar un periodo de siete días durante diciembre o enero, y refirió el caso al Programa de Relaciones de Familia. Véase Apéndice, págs. 45–46.

Varios días más tarde, el 29 de diciembre, el padre presentó una nueva moción en la que notificó que había consignado dos mil doscientos veinticinco dólares adicionales, y solicitó una enmienda a la sentencia de divorcio para que ésta reflejara que la patria potestad sería compartida, tal y como surgía de la minuta de la vista de divorcio. El tribunal de instancia declaró "no ha lugar" a la enmienda solicitada.

Mientras tanto, la madre, inconforme con la determinación del foro de instancia, acudió en alzada ante el Tribunal de Apelaciones. Reclamó que erró el tribunal de instan-

cia al ordenar que la menor fuera enviada a Puerto Rico sin haberse desarrollado antes un plan para reestablecer los lazos afectivos, ya que padre e hija no se habían relacionado en más de siete años. Además, adujo que es el tribunal de Florida el que tiene jurisdicción sobre la menor, ya que ésta reside allí hace varios años.

El foro apelativo reconoció el derecho de un padre a acudir a los tribunales para hacer valer la relación paternofilial en cualquier momento. No obstante, concluyó que el tribunal carecía de jurisdicción. Entendió el Tribunal de Apelaciones que aunque el foro de instancia emitió la sentencia de divorcio, por disposición de la ley federal P.K.P.A. y la interpretación que le hemos dado a ésta, ostenta jurisdicción sobre el asunto el foro que constituye el estado de residencia de la menor ("home state"), en este caso los tribunales de Florida. Ante la falta de jurisdicción para entender en los méritos sustantivos del caso, revocó el dictamen del Tribunal de Primera Instancia.

No conforme, el señor Montalvo acudió a nosotros en Solicitud de Apelación y en Moción Informativa en Auxilio de Jurisdicción. Nos plantea el peticionario los errores siguientes:

> Erró el [TA] al revocar la resolución del TPI sobre lo determinado en la vista celebrada el día 22 de diciembre de 2004, al decretar que el TPI no tenía jurisdicción para ello, violentándose así el derecho constitucional de un padre y de una hija de relacionarse, conforme a lo determinado en la sentencia de divorcio por el TPI, foro primario y foro a que se sometió la peticionaria para todos los fines legales pertinentes.
> Erró el [TA] al no entrar en los méritos y enmendar *nunc pro tunc* la sentencia de divorcio dictada con respecto a la patria potestad y confirmar al TPI, donde en la vista de divorcio se decretó que la patria potestad sobre la menor será compartida por ambos padres. Solicitud de apelación, pág. 6.

El 17 de junio de 2005 emitimos una orden a la parte recurrida para que mostrara causa por la cual no debía revocarse la sentencia del foro intermedio. La señora Infante compareció oportunamente en oposición al recurso. En su escrito la recurrida informó, por primera ocasión,

que en marzo de 2005, con posterioridad a haber acudido en alzada ante el Tribunal de Apelaciones y pendiente dicho procedimiento, ésta presentó ante el circuito judicial de Orange County, en el estado de Florida, una petición juramentada ante un notario público para reconocer en ese foro la sentencia de divorcio de 1997 y modificar la pensión alimenticia.([4])

Surge de la copia de la declaración jurada suscrita por la señora Infante,([5]) y anejada a su petición, que ésta, a pesar de ser consciente que estaba pendiente en los tribunales del Estado Libre Asociado de Puerto Rico el presente procedimiento de custodia, declaró lo siguiente:

> 6. *Participación en otros procedimientos*
> La ex esposa no ha participado como parte, testigo, o en alguna otra capacidad en otros procedimientos relacionados a la custodia o derechos de visita con el niño sujeto a este procedimiento.
> 7. *Conocimiento de otros procedimientos*
> La ex esposa no tiene conocimiento de ningún otro procedimiento que pueda afectar el presente procedimiento, incluyendo procedimientos para hacer cumplir decretos, ni procedimientos relacionados a violencia doméstica, órdenes protectoras, terminación de derechos de patria potestad, ni adopción.
> 8. *Otras partes solicitando derechos*
> La ex esposa no conoce de ninguna persona, ni una parte de este procedimiento que tenga custodia física o reclame tener custodia o derechos de visita en relación al niño sujeto a este procedimiento. (Traducción nuestra.) Apéndice de la Oposición a *certiorari*, pág. 40.

Contando con la comparecencia de las partes y estando en posición de resolver, pasamos a así hacerlo.

## II

Nuevamente tenemos ante nosotros la penosa situación de un padre no custodio que enfrenta dificultades al tratar

---

([4]) Inexplicablemente, el señor Montalvo no nos había notificado anteriormente de este hecho trascendental para la disposición del caso ante nuestra consideración.

([5]) Véase Apéndice de la Oposición a *certiorari*, págs. 36–41.

de ejercer el derecho a la relación paterno-filial con su hija. Esta situación, lamentable de por sí, se hace aún más compleja cuando se trata de una menor que reside fuera de Puerto Rico.

La ruptura del vínculo matrimonial trae consigo una serie de cambios importantes en la vida familiar, ya que desaparece el núcleo familiar establecido hasta ese entonces para quedar sustituido por uno de nueva composición. No cabe duda que las relaciones paterno y materno-filiales se ven afectadas por el divorcio, y que el ejercicio de los derechos y las obligaciones que tienen los padres respecto a sus hijos menores de edad, inevitablemente se ve alterado por las determinaciones de adjudicación de patria potestad y custodia. R.E. Ortega Vélez, *Lo que toda persona debe saber sobre el divorcio*, San Juan, Ediciones Scisco, 1998, págs. 63–65.

El Código Civil, en su Art. 107 (31 L.P.R.A. sec. 383), establece los parámetros que han de regir a nuestros tribunales en sus determinaciones después del divorcio. Al interpretar el referido artículo, consistentemente hemos enfatizado que las decisiones que tomen los tribunales sobre la custodia de los menores deben realizarse luego de llevar a cabo un ponderado análisis sobre todas las circunstancias ante su consideración, teniendo siempre como norte los mejores intereses y el bienestar de los menores. Véanse: *Ortiz v. Meléndez*, 164 D.P.R. 16 (2005); *Santana Medrano v. Acevedo Osorio*, 116 D.P.R. 298 (1985); *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495 (1978); *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90 (1976).[6]

Decretado por el tribunal el arreglo de custodia y los derechos de visita que mejor atiende los intereses del menor, lógicamente —tanto para el beneficio del menor como del padre no custodio— las partes tienen la obligación de hacer cumplir esos acuerdos. Así también los tribunales, en

---

[6] Para un listado no taxativo de factores que deben analizarse interrelacionadamente para determinar dónde descansa el mejor bienestar del menor, véase *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90 (1976).

su función de *parens patriae*, tienen la obligación de proteger el ejercicio de esos derechos. Ortega Vélez, *op. cit.*, pág. 73. Véanse, también, *Pena v. Pena*, 164 D.P.R. 949 (2005), y otros casos allí citados.

Por consideraciones de política pública, el derecho a la patria potestad debe ejercerse de la manera más liberalmente posible, garantizando así la mayor amplitud en la relación. Los tribunales no pueden prohibir estas relaciones a menos que existan circunstancias graves que lo justifiquen. Es un derecho de tal magnitud que no puede ser objeto de renuncia, no es susceptible de prescripción por no uso y no puede ser delegado a tercero ni objeto de transacción o renuncia. *Sterzinger v. Ramírez*, 116 D.P.R. 762 (1985).

Precisamente por ser el mejor interés del menor el criterio que gobierna las determinaciones de patria potestad y custodia, un decreto emitido a estos efectos no constituye cosa juzgada y la decisión puede reexaminarse si las circunstancias han cambiado y así lo requieren. Véanse: *Figueroa v. Del Rosario*, 147 D.P.R. 121 (1998); *Santana Medrano v. Acevedo Osorio*, supra; *Centeno Alicea v. Ortiz*, 105 D.P.R. 523 (1977). Sin embargo, la determinación crea un estado de derecho que no debe ser alterado sumariamente, salvo situaciones extraordinarias. *Santana Medrano v. Acevedo Osorio*, supra.

## III

Aclarado el estado de derecho vigente en cuanto a materia de relaciones filiales, corresponde que analicemos si el foro de instancia ostentaba jurisdicción para emitir el decreto que le fue solicitado por el padre no custodio.

A. En *Marrero Reyes v. García Ramírez*, supra, establecimos los requisitos que gobiernan la jurisdicción de nuestros tribunales en materia de custodia de menores. En aquel momento, adoptando la "regla más abarcadora posible" para conferirle a los tribunales de Puerto Rico la base

jurisdiccional, resolvimos que los tribunales del Estado Libre Asociado de Puerto Rico tienen jurisdicción para atender en casos de custodia en cualquiera de las siguientes circunstancias: "1) cuando se posee jurisdicción *in personam* sobre todos los litigantes o aun sobre una sola de las partes;[7] 2) cuando el menor está domiciliado en Puerto Rico; 3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y 4) cuando el menor es ciudadano o nacional de Puerto Rico". Íd., pág. 99.

Sin embargo, en *Marrero Reyes v. García Ramírez*, supra, reconocimos que el hecho que se cumpla con al menos uno de estos requisitos no necesariamente justifica el ejercicio de nuestras prerrogativas. Así, aun teniendo jurisdicción, la determinación sobre si ésta se ha de ejercer requiere la ponderación de un sinnúmero de factores, los cuales, en última instancia, van dirigidos a proteger y salvaguardar los mejores intereses del menor.[8] Al decidir ejercer jurisdicción en un caso en particular, el tribunal debe procurar alcanzar la mayor uniformidad posible, otorgando la mayor deferencia a determinaciones de otros foros. Íd.

B. En Estados Unidos, en 1968, el *National Conference of Commissioners on Uniform State Laws* adoptó el *Uniform Child Custody Jurisdiction Act* (U.C.C.J.A.), 9 (Parte 1A) *Uniform Laws Annotated (U.L.A.)* Sec. 1 *et seq.*, para atender los problemas interjurisdiccionales que se generaban cuando más de una jurisdicción tenía facultad para

---

[7] Para una discusión sobre el tema de la jurisdicción *in personam*, veánse, entre otros: *Medina v. Medina*, 161 D.P.R. 806 (2004); *Shuler v. Shuler*, 157 D.P.R. 707 (2002); *Peguero y otros v. Hernández Pellot*, 139 D.P.R. 487 (1995).

[8] Se mencionaron, a manera de ejemplo, los criterios siguientes: "la suficiencia de la información disponible para aquilatar debidamente los hechos y formar juicio sobre el impacto del decreto que se dicte sobre la personalidad y el bienestar del menor; la sustancialidad de los contactos del foro con la controversia; el grado a que el ejercicio de jurisdicción pueda desalentar la multiplicación y prolongación de controversias sobre el asunto y contribuir a crear la estabilidad necesaria; el punto a que se tienda, como se debe tender, a evitar el secuestro unilateral de menores para fines de obtener un decreto de custodia; y el extremo en que se facilite el mayor respeto posible a las determinaciones de otros estados, así como del propio foro". *Marrero Reyes v. García Ramírez*, supra, pág. 100.

intervenir en controversias relacionadas con la custodia de un menor, incluyendo el secuestro de un menor por su padre o madre no custodio.[9] Véase *Thompson v. Thompson*, 484 U.S. 174, 180–181 (1988). El objetivo principal del U.C.C.J.A. fue proveer normas uniformes que permitieran a los estados que adoptaran el estatuto el determinar si tenían jurisdicción en materia de custodia y, a la vez, obligarlos a reconocer los decretos de otros estados. De este modo se pretendió promover la cooperación interjurisdiccional para el beneficio de los menores.[10]

No obstante, años después de su promulgación, el U.C.C.J.A. no había alcanzado los resultados esperados, ya que no era de carácter obligatorio, no todos los estados lo aprobaron y otros lo aprobaron con modificaciones. Esto, a su vez, promovía interpretaciones conflictivas entre los estados que lo acogieron, que era precisamente lo que el estatuto pretendía evitar. El U.C.C.J.A. también resultó deficiente, ya que reconoce la jurisdicción concurrente entre estados sin establecer ningún tipo de prelación o preferencia entre jurisdicciones. Tanto el estado de residencia del menor como el otro estado donde las partes mantengan contactos significativos, pueden legítimamente reclamar jurisdicción sobre la materia de custodia, lo que alentó la práctica conocida como "forum shopping". Íd. Véase, también, S.T. Dickens, *The Parental Kidnapping Prevention Act: Application and Interpretation*, 23 (Núm. 3) J. Family Law 419 (1984–1985).[11]

---

[9] Nótese que la cláusula de entera fe y crédito de la Constitución de Estados Unidos —Art. IV, Sec. 1, L.P.R.A., Tomo 1— no aplica a los decretos de custodia, ya que éstos no son de naturaleza final y firme. *Fernández v. Rodríguez*, 411 N.Y.S.2d 134, 137 (1978), y otros casos allí citados.

[10] Cabe destacar que hoy todos los estados de Estados Unidos, el Distrito de Columbia y las Islas Vírgenes han aprobado sus versiones del *Uniform Child Custody Jurisdiction Act* (U.C.C.J.A.).

[11] Posteriormente se promovió el *Uniform Child Custody Jurisdiction and Enforcement Act* (U.C.C.J.E.A.), 9 (Parte 1A) *Uniform Laws Annotated (U.L.A.)* Sec. 101 *et seq.*, en sustitución del U.C.C.J.A. El U.C.C.J.E.A. constituyó un intento de revisar y clarificar interpretaciones incongruentes y ambiguas del U.C.C.J.A., en específico aquellas disposiciones relacionadas con la jurisdicción del foro judicial. C. Guzaldo Gamrath, *UCCJEA: A New Approach to Custody Jurisdiction and Interstate*

En un esfuerzo por remediar las deficiencias del U.C.C.J.A., en 1980 el Congreso de Estados Unidos aprobó el *Parental Kidnapping Prevention Act* (P.K.P.A.), 28 U.S.C.A. sec. 1738A (titulado *Full faith and credit given to child custody determinations*). Tal y como sugiere su título, el P.K.P.A., cuyas disposiciones se derivan del U.C.C.J.A., impone a los estados el deber de otorgar entera fe y crédito, a través de un patrón uniforme, a decretos de custodia de otros estados. Véase L.M. DeMelis, *Interstate Child Custody and the Parental Kidnapping Prevention Act: the Continuing Search for a National Standard*, 45 (Núm. 5) Hastings L.J. 1329 (1994).

El estatuto, en su declaración de propósitos, identifica como sus objetivos principales los siguientes: promover la cooperación interestatal, facilitar la ejecución de los decretos de custodia de otros estados, prevenir la competencia y el conflicto interjurisdiccional, y frenar la remoción unilateral de los menores con el propósito de obtener decretos favorables de otros foros. Por mandato expreso, el cumplimiento con las disposiciones de la ley es obligatorio para todos los estados, el Estado Libre Asociado de Puerto Rico y los territorios de Estados Unidos. 28 U.S.C.A. sec. 1738A(b)(8).

En términos generales, bajo el P.K.P.A. cuando el foro original haya actuado de acuerdo con las disposiciones del estatuto *y continúe teniendo jurisdicción sobre la materia*, la ley ordena a los tribunales de otros estados o jurisdicciones a reconocerle a ese decreto original entera fe y crédito. 28 U.S.C.A. sec. 1738A(a). Al igual que el U.C.C.J.A., el P.K.P.A. aplica a decretos de custodia y a órdenes de visita. Sobre este particular, citamos *in extenso* del P.K.P.A.:

(c) Una determinación de custodia o de derecho de visita

---

*Custody and Visitation*, 92 Ill.B.J. 204 (2004). Esta legislación incorpora unos procedimientos más expeditos y eficientes para asistir a los estados en hacer valer sus decretos de custodia y derechos de visita. Además, incluye estipulaciones dirigidas a proteger las víctimas de violencia doméstica, en conformidad con la ley federal *Violence Against Women Act* (V.A.W.A.), 18 U.S.C.A. sec. 2265.

hecha por un tribunal de un estado es compatible con los requisitos de esta sección solamente si—

(1) dicho tribunal tiene jurisdicción bajo las leyes de su estado; y

(2) se cumple con una de las siguientes condiciones:

(A) Ese estado (i) es el *estado de residencia* del menor a la fecha en que comenzaron los procedimientos, o (ii) *ha sido el estado de residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos* y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;

(B) (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor el tribunal de dicho estado asume jurisdicción debido a que (I) el menor y sus padres, o el menor y al menos uno de los litigantes, tiene *contactos significativos* con el estado, más allá de la mera presencia física en el mismo; y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;

(C) el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;

(D) (i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; o

(E) *el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección.* (Traducción y énfasis nuestros.) 28 U.S.C.A. sec. 1738A(c).

Surge de la anterior disposición que el P.K.P.A., al igual que el U.C.C.J.A., reconoce cuatro bases jurisdiccionales. Estas son: jurisdicción del estado de residencia del menor, jurisdicción por contactos significativos con el foro, jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, y jurisdicción para situaciones de emergencia. Sin embargo, donde el U.C.C.J.A. admite la jurisdicción concurrente, el P.K.P.A. establece un esquema jerárquico de preferencia jurisdiccional. Bajo este esquema, claramente se favorece al estado de residencia del

menor como aquel que merece entera fe y crédito de los estados y las demás jurisdicciones, mientras que sólo es posible asumir jurisdicción por contactos significativos cuando no es viable identificar el estado de residencia del menor. B.A. Atwood, *Child Custody Jurisdiction and Territoriality*, 52 (Núm. 2) Ohio St.L.J. 369 (1991); *Atkins v. Atkins*, 823 S.W.2d 816 (Ark.1992); *Williams v. Williams*, 430 S.E.2d 277 (N.C.1993). En Puerto Rico, véase *Ortega Jr. v. Morales Ortega*, 131 D.P.R. 783 (1992).

Nótese que la frase "estado de residencia del menor" significa aquel estado o jurisdicción donde un niño ha vivido con uno o ambos padres, o con un tutor, *al menos por seis meses consecutivos inmediatamente antes de la fecha en que se inicien los procedimientos de custodia o de fijación de derecho de visitas*. 28 U.S.C.A. sec. 1738A(b)(4).

El P.K.P.A. le reconoce expresamente *jurisdicción continua* al estado que emitió un decreto original de custodia para hacer valer y revisar su determinación original. Dispone lo siguiente:

> (d) La jurisdicción de un tribunal de un estado que haya emitido una determinación de custodia de menores o de derechos de visita, compatibles con las disposiciones de esta sección, continúa mientras se cumplan los requisitos de la sección (c)(1) y ese estado se mantenga como estado de residencia del menor o de alguno de los litigantes. (Traducción nuestra.) 28 U.S.C. sec. 1738A(d).

Por lo tanto, el P.K.P.A. establece tres requisitos necesarios para la jurisdicción continua, a saber: *un decreto de custodia original compatible con las disposiciones del estatuto, que el foro original mantenga jurisdicción bajo sus propias leyes y que dicho foro continúe siendo el lugar de residencia legal del menor o al menos de una de las partes*. Una vez cumplidos los requisitos de la cláusula de continuidad, es el estado o la jurisdicción que emitió el decreto judicial original cuya determinación de custodia recibirá entera fe y crédito. A.B. Goldstein, *The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform*

*Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act*, 25 U.C. Davis L. Rev. 845 (1992).[12]

*Es decir, si bien el P.K.P.A. da preferencia jurisdiccional al estado de residencia del menor para atender cuestiones de custodia de menores, la jurisdicción continua es el criterio rector ante la existencia de un decreto válido.* Esto refuerza la protección y estabilidad que brinda el P.K.P.A. a los decretos de custodia. M.E. Moraza Choisne, *Juridical Solutions in the U.S.A. for Parental Kidnapping in Child Custody Cases*, 24 (Núm. 2) Rev. Jur. U.I.P.R. 309, 319 (1990) ("In these actions, the jurisdiccional basis [providing continuous jurisdiction] is hierarchically superior even to home state jurisdiction").[13]

A manera de excepción, el P.K.P.A. reconoce a los tribunales la autoridad para modificar una determinación de custodia emitida originalmente por otro estado, siempre y cuando el estado que pretende modificar el decreto ostente jurisdicción para tomar determinaciones de custodia sobre el menor, y el foro original haya perdido jurisdicción para modificar el decreto o haya renunciado a ella. 28 U.S.C.A. sec. 1738A(f). La pérdida de jurisdicción del foro original se analiza a base de los parámetros jurisdiccionales del propio estatuto, según el esquema jerárquico establecido en 28 U.S.C.A. sec. 1738A(c).[14] *Crump v. Crump*, 821 P.2d 1172 (Utah 1991). Como norma general, los tribunales deberán celebrar una vista especial para determinar si el foro man-

---

[12] Para una interpretación de la cláusula de continuidad véanse, entre otros: *Delk v. González*, 658 N.E.2d 681 (Mass. 1995); *Glanzner v. State, SS*, 835 S.W.2d 386 (Mo. 1992); *Mitchell v. Mitchell*, 437 So.2d 122 (Ala. 1982).

[13] Para opiniones compatibles con la interpretación anterior, véanse: *Fuerstenberg v. Fuersternberg*, 591 N.W.2d 798 (S.D. 1999); *Barndt v. Barndt*, 580 A.2d 320 (Pa. 1990); *Dobbins v. Maner*, 517 So.2d 619 (Ala. 1987); *Clark v. Atkins*, 489 N.E.2d 90 (Ind. 1986); *O'Daniel v. Walter*, 686 S.W.2d 805 (Ark. 1985); *In re McBride*, 469 So.2d 645 (Ala. 1985); *Moore v. Pérez*, 428 So.2d 113 (Ala. App. 1983).

[14] Además de los factores enumerados en la propia ley, los tribunales han considerado otra serie de circunstancias relacionadas al bienestar del menor, como por ejemplo que el foro original no haya dado el peso debido a alegaciones de maltrato de parte del progenitor que continúa residiendo en el foro (*In re custody of Thorensen*, 730 P.2d 1380 (Wash. 1987)), o que se pruebe que el progenitor residente sea adicto a drogas o alcohólico (*Serna v. Salazar*, 651 P.2d 1292 (N.M. 1982)).

tiene jurisdicción o si, por el contrario, la ha perdido. *Schwartz v. Schwartz*, 428 S.E.2d 748 (S.C. 1993).

La ley declara que mientras esté pendiente otro procedimiento de custodia sobre ese menor en otro estado, los tribunales deberán abstenerse de asumir jurisdicción, siempre que el foro original esté ejerciendo jurisdicción de manera compatible con las disposiciones del estatuto. 28 U.S.C.A. sec. 1738A(g). De actuar el foro original de manera compatible con el P.K.P.A., el segundo estado al que se le reclama jurisdicción queda impedido de asumirla o, en todo caso, debe declinar ejercerla. *P.A.T. v. D.B.*, 638 So.2d 905 (Ala. 1994). En igual sentido, véanse: *Owens, by and through, Mosley v. Huffman*, 481 So.2d 231 (Miss. 1985); *In re Marriage of Hopson*, 168 Cal.Rptr. 345 (1980). En el estado de Florida, véase *Johnson v. Denton*, 542 So.2d 447 (Fla. 1989).

En casos en donde esté en controversia el derecho de visita —ya sea para limitar o acrecentar el derecho— se ha resuelto que el estado de residencia del progenitor no custodio seguramente tendrá mejor evidencia para tomar la determinación, a no ser que las razones para la modificación se relacionen precisamente a las actividades y la vida diaria del menor en su estado de residencia. *DeLee v. Koss*, 430 So.2d 196 (La. 1983).

Como ya vimos, el P.K.P.A. aplica expresamente a decretos de custodia emitidos válidamente. Se diseñó principalmente para proteger a los tribunales estatales de ataques de tribunales de otros estados sobre la validez de sus decretos de custodia y derechos de visita, o ante intentos de otros tribunales de modificarlos. DeMelis, *op. cit.* Todo con el claro propósito de prevenir la competencia y evitar los conflictos de custodia entre los estados con jurisdicción sobre la materia. Siendo así, *el P.K.P.A. no aplica ante la falta de conflicto interjurisdiccional o cuando sólo hay un foro involucrado con los procedimientos de custodia de un menor.* Ausente un segundo decreto de custodia o una acción de custodia pendiente en otro foro, no es bajo el P.K.P.A. sino bajo las leyes "estatales" que se dilucidan los

asuntos de custodia de menores. Véanse: *Erler v. Erler*, 862 P.2d 12 (Mont. 1993); *Pazder v. Pazder*, 556 N.Y.S.2d 427 (1990).

C. En Puerto Rico aplica el P.K.P.A. por mandato expreso federal, por cuanto los tribunales de Puerto Rico deben otorgar entera fe y crédito a los decretos de custodia de otros foros de Estados Unidos, en aquellos casos de custodia que cumplan con los parámetros de dicha ley federal y en los que se haya observado propiamente el debido proceso de ley. Véanse: *Ortega Jr. v. Morales Ortega*, supra; *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529 (1989); *Perron v. Miranda*, 114 D.P.R. 25 (1983); *Perron v. Corretjer*, 113 D.P.R. 593 (1982).

De igual modo, los estados de Estados Unidos están obligados por el P.K.P.A. a reconocer los decretos de custodia emitidos originalmente en el Estado Libre Asociado de Puerto Rico, siempre que éstos se ajusten a las disposiciones del P.K.P.A. En *In re Marriage of Zierenberg*, 16 Cal.Rptr.2d 238 (1992), el tribunal de apelaciones de California determinó que bajo los parámetros del P.K.P.A. era Puerto Rico, y no California, el estado de residencia de los menores al momento de emitir el decreto de custodia, ya que Puerto Rico tenía jurisdicción bajo sus propias leyes y no la había renunciado. El tribunal resolvió que Puerto Rico mantuvo jurisdicción continua para decretar y modificar las órdenes de custodia.

Así también, en *Herrero v. Matas*, 447 So.2d 335 (Fla. 1984), un tribunal del Condado de Dade, Florida, que era el estado de residencia de la menor, asumió jurisdicción ante una solicitud de la madre para modificar un decreto de custodia emitido originalmente en Puerto Rico. Existía en ese momento un procedimiento de custodia pendiente en Puerto Rico. El foro apelativo de Florida revocó. Resolvió que Puerto Rico había retenido control de todos los aspectos del litigio, se había mantenido activo en la disputa de custodia y había actuado en "conformidad sustancial" con el U.C.C.J.A., por cuanto el tribunal del Condado de

Dade había asumido jurisdicción indebidamente. En igual sentido, véanse: *Izmery v. Izmery*, 559 So.2d 1211 (Fla. 1990); *Sterzinger v. Efron*, 534 So.2d 798 (Fla. 1988).

*A contrario sensu*, en *Fernández v. Rodríguez*, 411 N.Y.S.2d 134 (1978), la corte suprema del estado de Nueva York resolvió que el decreto de custodia original emitido por el tribunal de Puerto Rico no se ajustó a los estándares del U.C.C.J.A.,[15] por cuanto rechazó dar entera fe y crédito —reconocer y hacer valer— al dictamen emitido en Puerto Rico.

D. Analizada la legislación federal P.K.P.A. —su trayectoria y sus propósitos— y la jurisprudencia que la ha interpretado, entendemos que, aun existiendo otro estado o jurisdicción que constituya el estado de residencia del menor, un tribunal de Puerto Rico mantiene jurisdicción continua en conformidad con el P.K.P.A. para emitir una orden de custodia *cuando el tribunal en Puerto Rico haya actuado con jurisdicción de acuerdo con las disposiciones de la ley federal al emitir la determinación original de custodia*. El análisis es el siguiente:

Primero, corresponde evaluar si el tribunal de Puerto Rico emitió el decreto original de custodia de manera compatible con las disposiciones del P.K.P.A., es decir, ejerciendo válidamente jurisdicción al amparo de nuestro propio derecho y, además, en cumplimiento con los requerimientos jurisdiccionales dispuesto en 28 U.S.C.A. sec. 1738A(c).

Segundo, resulta necesario considerar si el tribunal de Puerto Rico mantiene jurisdicción en materia de custodia de menores bajo nuestro propio derecho.

Tercero, se requiere que al menos una de las partes continúe residiendo en Puerto Rico.

De cumplirse cabalmente estos criterios, será forzoso concluir que los tribunales de Puerto Rico mantienen juris-

---

[15] El tribunal de Nueva York determinó que el dictamen de Puerto Rico no fue compatible con los parámetros del U.C.C.J.A. por consideraciones de debido proceso de ley y, además, porque no se cumplían con los requisitos jurisdiccionales.

dicción, bajo la cláusula de continuidad del P.K.P.A. (28 U.S.C.A. sec. 1378A(d)), para ordenar el cumplimiento ("enforcement") o para modificar sus decretos de custodia.

## IV

Con el anterior trasfondo doctrinal, analicemos los hechos del caso.

La controversia medular que nos ocupa es si el Tribunal de Primera Instancia retuvo jurisdicción, luego de decretado el divorcio de los comparecientes, para emitir la orden que le ha solicitado el padre no custodio para hacer valer su derecho de visita. El Tribunal de Apelaciones erró al resolver bajo el P.K.P.A., cuando ante dicho foro no se había planteado conflicto jurisdiccional alguno, ya que no fue informado del pleito presentado por la recurrida ante un tribunal en la Florida.

Ahora bien, en su comparecencia ante nosotros, la recurrida nos informó del pleito que presentó ante los tribunales en Florida por lo que, en estos momentos, existen dos jurisdicciones donde el asunto de la custodia de la menor está pendiente. Por ende, aplica la legislación federal P.K.P.A. y procede que resolvamos de acuerdo con sus postulados.

Lo cierto es que el Tribunal de Apelaciones erró en su interpretación del P.K.P.A. El tribunal en su sentencia reconoció que el P.K.P.A. favorece un esquema de jurisdicción continua, mas no discutió la disposición estatutaria que lo reconoce así. Más bien centralizó su discusión alrededor de la cláusula del estado de residencia del menor. Por el contrario, procedía evaluar detenidamente nuestra jurisdicción conforme a un análisis integrado del estatuto federal, sin limitar el análisis a sólo una de sus cláusulas.[16] Veamos.

---

[16] En *Ortega Jr. v. Morales Ortega,* supra, no examinamos la cláusula de continuidad del P.K.P.A. como lo hacemos en esta ocasión. Allí centramos nuestra discusión en la cláusula de residencia del menor del estatuto federal y resolvimos a base de ello.

Según hemos indicado, precisa determinar si, por ser Puerto Rico el foro que emitió el decreto original de custodia en este caso, bajo la cláusula de continuidad del P.K.P.A. conserva jurisdicción para emitir una orden relacionada con la determinación original de custodia. De acuerdo con el análisis de jurisdicción continua corresponde resolver, como cuestión de umbral, si el tribunal de Puerto Rico actuó de forma compatible con el P.K.P.A. al emitir el decreto original de custodia en 1997.

Es decir, debemos determinar si al momento del decreto original era Puerto Rico el estado de residencia de la menor o, en su defecto, que no hubiera en ese momento otro foro que cualificara como estado de residencia de la menor, haciéndose posible la jurisdicción por contactos significativos con el foro. Ello exige que se determine si en ese momento la menor llevaba al menos seis meses residiendo ininterrumpidamente en Puerto Rico, o si, por el contrario, la menor llevaba ese tiempo o más residiendo en la Florida. De ser este último el caso, entonces, para efectos del P.K.P.A., el decreto original no se conformó a sus requerimientos.

Al revisar el expediente ante nuestra consideración nos percatamos que no contiene información sobre este asunto, ya que no ha sido tema de análisis ni por el tribunal de instancia ni el de apelaciones, como tampoco por las partes involucradas en esta controversia. A base de la información que consta en autos, no se puede concluir con certeza cuál era el lugar de residencia de la menor al fijarse las relaciones paterno-filiales. Ello es imprescindible para determinar, conforme a los parámetros del P.K.P.A., si los tribunales de Puerto Rico mantienen jurisdicción continua para modificar su dictamen original.

Este es un asunto que, en última instancia, debe dilucidarse en una vista evidenciaria en la que las partes aporten la prueba necesaria sobre sus respectivas residencias al momento de decretarse el divorcio y fijarse las relaciones paterno-filiales. Sólo de esta forma se podrá atender la controversia jurisdiccional planteada en este caso. A esos

efectos, el caso debe ser devuelto al Tribunal de Primera Instancia para que celebre la correspondiente vista acorde con lo aquí dispuesto.

De resolverse que Puerto Rico actuó con jurisdicción de acuerdo con el P.K.P.A. para emitir el decreto original, es claro que los demás requisitos para la jurisdicción continua están debidamente atendidos. Esto es así ya que mantenemos jurisdicción bajo nuestro derecho y al menos una de las partes mantiene residencia en Puerto Rico. Procedería entonces que el foro primario ejerciera su jurisdicción conforme con los mejores intereses de la menor.

## V

Resta expresarnos sobre el segundo señalamiento de error traído ante nuestra consideración. El peticionario nos pide que se enmiende el dictamen original para que se ejerza la patria potestad de manera compartida entre ambos progenitores. La Regla 49.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, gobierna en cuanto a la corrección de errores incurridos debido a inadvertencia u omisión. Esta regla faculta a los tribunales a corregir en cualquier momento los errores de forma en una sentencia. Sobre el procedimiento, denominado "enmienda *nunc pro tunc*", la regla dispone que:

> Los errores de forma en las sentencias, órdenes u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordenare. Durante la tramitación de una apelación o un recurso de *certiorari*, podrán corregirse dichos errores antes de elevar el expediente al tribunal de apelación y, posteriormente, sólo podrán corregirse con permiso del tribunal de apelación.

Adviértase que, independientemente de la facultad que esta regla le confiere a los tribunales, para efectuar enmiendas *nunc pro tunc*, éstos tienen un poder inherente para corregir en cualquier momento sus expedientes de

manera tal que reflejen la realidad, aun cuando se trate de sentencias finales. *Security Ins. Co. v. Tribunal Superior*, 101 D.P.R. 191 (1973); *Sucn. Rosario v. Sucn. Cortijo*, 83 D.P.R. 678 (1961).

Hemos avalado como errores de forma las correcciones de errores del Secretario del tribunal al anotar una sentencia (*Pueblo v. Miranda*, 56 D.P.R. 601 (1940)), añadir a una sentencia remedios adicionales derivados del derecho originalmente concedido (*Concepción v. Latoni*, 63 D.P.R. 693 (1944)([17])), añadir o modificar una descripción de un bien en una sentencia (*Cintrón v. A. Hartman & Co.*, 43 D.P.R. 179 (1932)) y conceder costas cuando éstas se reconocen en la opinión (*Lawton v. Rodríguez*, 41 D.P.R. 447 (1930)). Siempre que el expediente sustente el remedio, la omisión en concederlo resulta subsanable mediante una enmienda *nunc pro tunc*, con el efecto práctico que ésta se retrotrae. *S.L.G. Coriano-Correa v. K-mart Corp.*, 154 D.P.R. 523 (2001).

El criterio principal es que la cuestión que ha de ser enmendada no conlleve la alteración de un derecho sustantivo, sino la corrección de una mera inadvertencia. En cambio, ante una cuestión de interpretación de ley —aun tratándose de un cálculo matemático— no procede la enmienda *nunc pro tunc. Banco Popular v. Tribunal Superior*, 82 D.P.R. 242 (1961). En esta situación se considera un error de derecho sustantivo y no un error de forma, y no podrá ser corregido por el tribunal una vez la sentencia advenga firme. *García López v. Méndez García*, 102 D.P.R. 383.

De acuerdo con los parámetros anteriores, entendemos que la solicitud de enmienda *nunc pro tunc* para corregir la sentencia de divorcio a que refleje que la patria potestad será compartida no procede en derecho. No se trata de una enmienda de forma, ya que lo solicitado afecta los derechos sustantivos de las partes. Por el contrario, esta enmienda tenía que haberse solicitado oportunamente, antes que la

---

([17]) Revocado en cuanto a otro punto de derecho.

sentencia de divorcio —emitida en el 1997— fuera final y firme. No procede una solicitud de enmienda a estos efectos a más de ocho años luego de haberse emitido el dictamen.

En vista de la anterior discusión estamos conformes con la sentencia hoy dictada, la cual revoca al Tribunal de Apelaciones y devuelve el caso al Tribunal de Primera Instancia para la celebración de una vista en la cual se habrá de determinar si, al momento de decretado el divorcio de las partes en este caso y fijarse las relaciones paterno-filiales, Puerto Rico era el estado de residencia de la menor, o que no hubiese en ese momento otro foro que pudiese cualificar como tal.