EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yanira Ivelisse Infante de Arce <br><br> Recurrida <br><br> v. <br><br> Víctor Luis Montalvo Mulero <br><br> Peticionario | Certiorari <br><br> 2005 TSPR 139 <br><br> 165 DPR _____ |

Número del Caso: AC-2005-29

Fecha: 23 de septiembre de 2005

Tribunal de Apelaciones:

Región Judicial de Bayamón

Juez Ponente:

Hon. Guillermo J. Arbona Lago

Abogada de la Parte Peticionaria:

Lcda. Grisel Yolanda Montalvo

Abogada de la Parte Recurrida:

Lcda. Isbel Ahmad Fuentes

Materia: Divorcio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Yanira Ivelisse Infante de Arce

    Recurrida

       v.                    AC-2005-29

Víctor Luis Montalvo Mulero

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 23 de septiembre de 2005

El peticionario, Víctor Luis Montalvo Mulero y la recurrida, Yanira Infante de Arce, contrajeron matrimonio en Puerto Rico en el año 1991. De dicha unión procrearon una niña quien en la actualidad cuenta con trece (13) años de edad. La menor nació en Puerto Rico.

En diciembre de 1996, la señora Infante, quien para entonces vivía en Estados Unidos, presentó en Puerto Rico una demanda de divorcio. En abril de 1997 el Tribunal de Primera Instancia, Sala Superior de Bayamón, asumió jurisdicción y declaró con lugar la petición. La custodia y patria

potestad de la menor le fue concedida a su madre. La sentencia dictada incorporó las estipulaciones acordadas por las partes regulando la relación paterno-filial. La sentencia proveía para un plan de llamadas periódicas y visitas con el padre durante la época navideña y en el verano.

El 28 de julio de 2004, el señor Montalvo presentó, en el pleito de divorcio una moción en la que solicitó se encontrara a la señora Infante incursa en desacato por impedir las relaciones paterno filiales. Además, consignó en el tribunal la cantidad de ocho mil dólares ($8,000.00) en concepto de pensión alimentaria adeudada, para beneficio de la menor. La señora Infante se opuso a la moción presentada y adujo que el tribunal con jurisdicción lo era el de Florida donde ella residía con la menor y no los tribunales del Estado Libre Asociado de Puerto Rico.

Luego de celebrada una vista, el tribunal primario resolvió que conservaba jurisdicción para atender en esta controversia y ordenó que la menor viajara a Puerto Rico a relacionarse con su padre.

Inconforme, la señora Infante acudió en alzada ante el Tribunal de Apelaciones. El foro apelativo resolvió, que en virtud de la ley federal conocida como Parental Kidnapping Prevention Act ("PKPA") 28 U.S.C. secs. 1738 A, *et seq.*, la jurisdicción sobre este asunto la ostentan los tribunales del estado de la Florida no los del Estado Libre

Asociado de Puerto Rico. En virtud de ello, revocó al foro de instancia.

No conforme, el señor Montalvo acudió ante nosotros en solicitud de apelación y con una moción en auxilio de jurisdicción. El 17 de junio de 2005 dictamos una orden dirigida a la recurrida para que mostrara causa por la cual no debía revocarse la sentencia del foro intermedio. La señora Infante compareció oportunamente.

Evaluado los escritos presentados por las partes y atendido el recurso presentado como un *certiorari* expedimos el mismo y se dicta sentencia revocando al Tribunal de Apelaciones. Se devuelve el caso al foro primario para que determine si al momento del divorcio del señor Montalvo y la señora Infante, Puerto Rico era el estado de residencia de la menor o, que no hubiera en ese momento otro foro que cualificara como estado de residencia de la menor. Para ello, deberá determinar si al momento del divorcio de sus padres, la menor llevaba al menos seis meses residiendo ininterrumpidamente en Puerto Rico, o, si por el contrario, la menor llevaba ese tiempo o más, residiendo en la Florida. De ser este último el caso, para efectos del PKPA, el decreto original de divorcio no se conformó a sus requerimientos y por lo tanto, en estos momentos, quien tiene jurisdicción en este caso es el estado de la Florida. *A contrario sensu*, si Puerto Rico era el lugar de residencia de la menor cuando se decretó disuelto el matrimonio del señor Montalvo y la señora Infante, entonces

quien tendría jurisdicción serían los tribunales de Puerto Rico.

Finalmente, el segundo señalamiento de error señalado por el peticionario no fue cometido. La enmienda *nunc pro tunc* solicitada por el peticionario al dictamen de divorcio original, no es una enmienda de forma por afectar los derechos sustantivos de las partes, por lo que no procede su solicitud como cuestión de derecho.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad a la cual se le unió el Juez Presidente señor Hernández Denton y el Juez Asociado señor Rebollo López. La Jueza Asociada señora Fiol Matta concurre con el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. "El Juez Asociado señor Rivera Pérez disiente por entender que la jurisdicción sobre el caso de marras la tiene el estado de Florida por ser el "estado de residencia" de la menor de edad por más de seis (6) meses (varios años), a tenor con lo dispuesto por el Parental Kidnapping Prevention Act, 28 U.S.C.A 1738 A."

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Yanira Ivelisse Infante de Arce
        Recurrida

            v.

                                        AC-2005-029

Víctor Luis Montalvo Mulero
        Peticionario


Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez, a la cual se le unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Rebollo López


San Juan, Puerto Rico, a 23 de septiembre de 2005

El caso de autos plantea si los tribunales de Puerto Rico mantienen jurisdicción, a tenor con el "Parental Kidnapping Prevention Act" (en adelante "PKPA"), para ordenar el cumplimiento de una determinación de custodia emitida en Puerto Rico en un procedimiento de divorcio, cuando la menor en cuestión reside hace varios años en el estado de Florida.

Entendemos que, bajo la cláusula de continuidad del PKPA, un tribunal de Puerto Rico mantiene jurisdicción sobre un procedimiento de custodia a pesar de no ser el estado de residencia del menor,

siempre y cuando el decreto original haya sido emitido consistentemente con los parámetros de dicho estatuto; y el tribunal no haya de otro modo perdido o renunciado a su jurisdicción.

**I**

El señor Víctor Luis Montalvo Mulero (señor Montalvo o el padre) y la señora Yanira Ivelisse Infante de Arce (señora Infante o la madre) contrajeron matrimonio en la ciudad de Manatí, Puerto Rico allá para junio del 1991. De dicha unión nació en Puerto Rico una niña, quien al momento cuenta con trece (13) años de edad. Luego de varios años de matrimonio, el 23 de diciembre de 1996, la señora Infante, quien en ese momento vivía en los Estados Unidos con su hija, radicó en nuestra jurisdicción una demanda de divorcio.[1]

En abril del año 1997 el Tribunal de Primera Instancia, Sala Superior de Bayamón, asumió jurisdicción sobre las partes, declaró con lugar la demanda y dictó sentencia de divorcio bajo la causal de separación.[2] El tribunal otorgó tanto la custodia como la patria potestad de la menor de edad a su madre, no empece constar en la minuta de la vista del juicio que la patria potestad sería

---

[1] No surge claro de los documentos que obran en el expediente qué tiempo llevaban la señora Infante y la menor fuera de Puerto Rico al momento de presentar la demanda de divorcio. El señor Montalvo alega que a esa fecha llevaba aproximadamente un (1) año sin ver a su hija.

[2] Al momento de la sentencia de divorcio el señor Montalvo residía en Bayamón, Puerto Rico, mientras que la señora Infante y la menor se encontraban domiciliadas en Orlando, Florida. Véase Apéndice, a la pág. 27.

compartida. Véase Apéndice a la pág. 24. En la sentencia de divorcio se incorporaron las estipulaciones acordadas por las partes respecto a cómo se regiría la relación paterno filial. Se estableció para un plan de llamadas telefónicas periódicas y siete (7) días de derecho de visitas con el padre en las épocas de verano y navidad. Además, se estipuló una pensión alimentaria consistente en doscientos veinticinco dólares ($225) a ser pagada mensualmente por el padre.

Alega la señora Infante, que el padre incumplió con las disposiciones antes transcritas ya que no emitió pago alguno de pensión, no llamó a su hija ni procuró buscarla. Por su parte, el padre argumenta que desde que envió el primer cheque de pago de pensión el mismo le fue devuelto por el correo federal. Aduce que la madre le ocultó su dirección, le devolvía sus cartas haciéndole creer que no vivía en esa dirección y cambió su número de teléfono para evitar la comunicación entre padre e hija. Todo parece indicar que desde que se dictó la sentencia de divorcio, el padre y su hija se comunicaron telefónicamente sólo en dos ocasiones.

Durante la época de verano de 2003, el padre advino en conocimiento que la menor se encontraba de vacaciones en Puerto Rico en casa de su abuela materna.[3] En esa ocasión

---

[3] Posteriormente el padre se enteró que, desde que se decretó el divorcio, la menor pasaba todos los veranos en Puerto Rico en la casa de su abuela materna, donde también reside su hermano materno.

se coordinaron varias visitas con sus familiares paternos, en las que la menor tuvo la oportunidad de compartir con su padre, abuelos y demás familiares. La menor, alegadamente, prometió a su padre que regresaría a visitarlo durante las próximas vacaciones. No obstante, reclama el padre que luego de esta fecha no volvió a saber de su hija.

Así las cosas, el 28 de julio de 2004, el señor Montalvo presentó ante el tribunal de instancia, dentro del mismo pleito de divorcio, una "Moción de Consignación y Solicitud de Desacato por Relaciones Paterno-Filiales". En ésta informó su deseo de relacionarse con su hija, solicitó que se encontrara a la señora Infante incursa en desacato por impedir las relaciones paterno filiales; y además, informó que por desconocer la dirección de la menor procedía a consignar en el tribunal la cantidad de ocho mil dólares ($8,000) en concepto de pensión alimentaria para beneficio de la menor. Posteriormente, solicitó que la menor fuera enviada a Puerto Rico para el periodo navideño.

Por su parte, la madre se opuso. Adujo que ha residido junto a su hija en la Florida en la misma dirección ininterrumpidamente desde que se decretó el divorcio y que el padre en seis (6) años nunca hizo gestiones para relacionarse con la menor. Alegó que el repentino interés del señor Montalvo en relacionarse con su hija surgió a raíz del deseo expresado por su actual esposo en adoptarla. Finalmente, solicitó la desestimación de la

acción presentada ya que el tribunal con jurisdicción era el de Florida.

Luego de celebrar una vista de relaciones paterno filiales a la que no compareció la madre, más sí su representación legal, el tribunal de instancia emitió una resolución el 22 de diciembre de 2004 en la que determinó que conservaba jurisdicción para atender el asunto. Reiteró el tribunal que las relaciones paterno filiales debían cumplirse conforme a lo establecido en la sentencia de divorcio y que la señora Infante debía garantizar su cumplimiento. En vista de lo cual ordenó que la menor viajara a Puerto Rico a pasar un periodo de siete (7) días durante diciembre o enero y refirió el caso al Programa de Relaciones de Familia. Véase Apéndice, págs. 45-46.

Varios días más tarde, el 29 de diciembre, el padre presentó una nueva moción en la que notificó que había consignado dos mil doscientos veinticinco dólares adicionales ($2,225), y solicitó una enmienda a la sentencia de divorcio para que la misma reflejara que la patria potestad sería compartida, tal y como surgía de la minuta de la vista de divorcio. El tribunal de instancia declaró no ha lugar la enmienda solicitada.

Mientras tanto, la madre, inconforme con la determinación del foro de instancia, acudió en alzada ante el Tribunal de Apelaciones. Reclamó que erró el tribunal de instancia al ordenar que la menor fuera enviada a Puerto Rico sin haberse antes desarrollado un plan para

reestablecer los lazos afectivos, toda vez que padre e hija no se habían relacionado en más de siete (7) años. Además, adujo que es el tribunal de Florida el que tiene jurisdicción sobre la menor ya que ésta reside allí hace varios años.

El foro apelativo reconoció el derecho de un padre a acudir a los tribunales para hacer valer la relación paterno filial en cualquier momento. No obstante, concluyó que el tribunal carecía de jurisdicción. Entendió el Tribunal de Apelaciones que aunque el foro de instancia emitió la sentencia de divorcio, por disposición de la ley federal Parental Kidnapping Prevention Act y la interpretación que le hemos dado a la misma, ostenta jurisdicción sobre el asunto el foro que constituye el estado de residencia de la menor ("home state"), en este caso los tribunales de Florida. Ante la falta de jurisdicción para entender en los méritos sustantivos del caso, revocó el dictamen del Tribunal de Primera Instancia.

No conforme, el señor Montalvo acudió a nosotros en Solicitud de Apelación y en Moción Informativa en Auxilio de Jurisdicción. Nos plantea el peticionario los siguientes errores:

> Erró el TA al revocar la resolución del TPI sobre lo determinado en la vista celebrada el día 22 de diciembre de 2004, al decretar que el TPI no tenía jurisdicción para ello, violentándose así el derecho constitucional de un padre y de una hija de relacionarse, conforme a lo determinado en la sentencia de divorcio por el TPI, foro primario y foro a que se sometió la peticionaria para todos los fines legales pertinentes.

> Erró el TA al no entrar en los méritos y enmendar *nunc pro tunc* la sentencia de divorcio dictada con respecto a la patria potestad y confirmar al TPI, donde en la vista de divorcio se decretó que la patria potestad sobre la menor será compartida por ambos padres.

El 17 de junio de 2005 emitimos orden a la parte recurrida para que mostrara causa por la cual no debía revocarse la sentencia del foro intermedio. La señora Infante compareció oportunamente en oposición al recurso. En su escrito la recurrida informó, por primera ocasión, que el pasado mes de marzo de 2005, con posterioridad a haber acudido en alzada ante el Tribunal de Apelaciones y pendiente dicho procedimiento, ésta presentó ante el circuito judicial de "Orange County" en el estado de Florida, una petición juramentada ante un notario público para reconocer en ese foro la sentencia de divorcio de 1997 y modificar la pensión alimentaria.[4]

Surge de la copia de la declaración jurada suscrita por la señora Infante[5] y anejada a su petición, que ésta, a pesar de ser consciente que estaba pendiente en los tribunales del Estado Libre Asociado de Puerto Rico el presente procedimiento de custodia, declaró lo siguiente:

6. **Participación en otros procedimientos**
La ex esposa no ha participado como parte, testigo, o en alguna otra capacidad en otros procedimientos relacionados a la custodia o

---

[4] Inexplicablemente, el señor Montalvo no nos había notificado anteriormente de este hecho trascendental para la disposición del caso ante nuestra consideración.

[5] Véase Apéndice de la Oposición a Recurso Certiorari Civil, págs. 36 a 41.

derechos de visita con el niño sujeto de este procedimiento.

7. **Conocimiento de otros procedimientos**
   La ex esposa no tiene conocimiento de ningún otro procedimiento que pueda afectar el presente procedimiento, incluyendo procedimientos para hacer cumplir decretos, ni procedimientos relacionados a violencia doméstica, órdenes protectoras, terminación de derechos de patria potestad, ni adopción.

8. **Otras partes solicitando derechos**
   La ex esposa no conoce de ninguna persona, ni una parte de este procedimiento que tenga custodia física o reclame tener custodia o derechos de visita en relación al niño sujeto a este procedimiento. (Traducción nuestra.)

Contando con la comparecencia de las partes y estando en posición de resolver pasamos a así hacerlo.

**II**

Nuevamente tenemos ante nosotros la penosa situación de un padre no custodio que enfrenta dificultades al tratar de ejercer el derecho a la relación paterno filial con su hija. Esta situación, lamentable de por sí, se hace aun más compleja cuando se trata de una menor que reside fuera de Puerto Rico.

La ruptura del vínculo matrimonial trae consigo una serie de cambios importantes en la vida familiar ya que desaparece el núcleo familiar establecido hasta ese entonces, para quedar sustituido por uno de nueva composición. No cabe duda que las relaciones paterno y materno filiales se ven afectadas por el divorcio, y que el ejercicio de los derechos y obligaciones que tienen los padres respecto a sus hijos menores de edad,

inevitablemente se ve alterado por las determinaciones de adjudicación de patria potestad y custodia. R.E. Ortega Vélez, *Lo que toda persona debe saber sobre el divorcio,* Ediciones Scisco, San Juan, Puerto Rico, 1988, a las págs. 63-65.

El Código Civil en su Artículo 107, 31 L.P.R.A. sec. 383, establece los parámetros que han de regir a nuestros tribunales en sus determinaciones post divorcio. Al interpretar el referido artículo consistentemente hemos enfatizado que las decisiones que tomen los tribunales sobre la custodia de los menores deben realizarse luego de llevar a cabo un ponderado análisis sobre todas las circunstancias ante su consideración, teniendo siempre como norte los mejores intereses y el bienestar de los menores. Veáse *Ortiz García v. Meléndez Lugo*, res. el 3 de marzo de 2005, 2005 T.S.P.R. 19, 163 D.P.R. ___; *Santana Medrano v. Acevedo Osorio,* 116 D.P.R. 298 (1985); *Nudelman v. Ferrer Bolivar,* 107 D.P.R. 495 (1978); *Marrero Reyes v. García Ramírez,* 105 D.P.R. 90 (1976).[6]

Decretado por el tribunal cuál es el arreglo de custodia y derechos de visita que mejor atiende los intereses del menor; lógicamente --tanto para el beneficio del menor como del padre no custodio-- las partes tienen la obligación de hacer cumplir esos acuerdos. Así también,

---

[6] Para un listado no taxativo de factores que deben analizarse interrelacionadamente para determinar dónde descansa el mejor bienestar del menor véase *Marrero Reyes v. García Ramírez,* 105 D.P.R. 90 (1976).

los tribunales en su función de *parens patriae* tienen la obligación de proteger el ejercicio de esos derechos. R.E. Ortega Vélez, *supra,* a la pág. 73. También *Pena Fonseca v. Pena Rodríguez,* res. el 15 de junio de 2005, 2005 T.S.P.R. 84, 164 D.P.R. ___, y otros casos allí citados.

Por consideraciones de política pública, el derecho a la patria potestad debe ejercerse de la manera más liberalmente posible, garantizando así la mayor amplitud en la relación. Los tribunales no pueden prohibir estas relaciones a menos que existan circunstancias graves que lo justifiquen. Es un derecho de tal magnitud que no puede ser objeto de renuncia, no es susceptible de prescripción por no uso, no puede ser delegado a tercero, ni objeto de transacción o renuncia. *Sterzinger v. Ramírez,* 116 D.P.R. 762 (1985).

Precisamente por ser el mejor interés del menor el criterio que gobierna las determinaciones de patria potestad y custodia, un decreto emitido a estos efectos no constituye cosa juzgada y la decisión puede reexaminarse si las circunstancias han cambiado y así lo requieren. Veáse *Santana Medrano v. Acevedo Osorio, supra; Figueroa Hernández v. del Rosario Cervoni,* 147 D.P.R. 121 (1998); *Centeno Alicea v. Ortiz,* 105 D.P.R. 523 (1977). Sin embargo, la determinación crea un estado de derecho que no debe ser alterado sumariamente, salvo situaciones extraordinarias. *Santana Medrano v. Acevedo Osorio, supra.*

**III**

Aclarado el estado de derecho vigente en cuanto a materia de relaciones filiales; corresponde que analicemos si el foro de instancia ostentaba jurisdicción para emitir el decreto que le fue solicitado por el padre no custodio.

**A.**

En *Marrero Reyes v. García Ramírez, supra,* establecimos los requisitos que gobiernan la jurisdicción de nuestros tribunales en materia de custodia de menores. En aquel momento, adoptando la "regla más abarcadora posible" para conferirle a los tribunales de Puerto Rico la base jurisdiccional; resolvimos que los tribunales del Estado Libre Asociado de Puerto Rico tienen jurisdicción para atender en casos de custodia en cualquiera de las siguientes circunstancias: "1)cuando se posee jurisdicción *in personam* sobre todos los litigantes o aun sobre una sola de las partes;[7] 2)cuando el menor está domiciliado en Puerto Rico; 3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y 4)cuando el menor es ciudadano o nacional de Puerto Rico." *Íbid*, pág. 99.

Sin embargo, en *Marrero* reconocimos que el hecho que se cumpla con al menos uno de estos requisitos no necesariamente justifica el ejercicio de nuestras

---

[7] Para una discusión sobre el tema de la jurisdicción *in personam* Veáse, entre otros, *Medina Garay v. Medina Garay,* res. el 19 de mayo de 2004, 2004 T.S.P.R. 75, 161 D.P.R. ___; *Shuler v. Shuler*, res. el 19 de agosto de 2002, 2002 T.S.P.R. 109, 157 D.P.R. ___; *Peguero v. Hernández Pellot,* 139 D.P.R. 487 (1995).

prerrogativas. Así, aun teniendo jurisdicción, la determinación sobre si se ha de ejercer la misma, requiere la ponderación de un sinnúmero de factores, los cuales, en última instancia, van dirigidos a proteger y salvaguardar los mejores intereses del menor.[8] Al decidir ejercer jurisdicción en un caso en particular, el tribunal debe procurar alcanzar la mayor uniformidad posible, otorgando la mayor deferencia a determinaciones de otros foros. *íbid.*

**B.**

En los Estados Unidos, en el año 1968, el "National Conference of Commissioners on Uniform State Laws", adoptó el "Uniform Child Custody Jurisdiction Act" (UCCJA), Uniform Laws Annotated, Volumen 9, Parte 1A, págs. 270 *et seq.,* para atender los problemas interjurisdiccionales que se generaban cuando más de una jurisdicción tenía facultad para intervenir en controversias relacionadas con la custodia de un menor, incluyendo el secuestro de un menor

---

[8] Se mencionaron, a manera de ejemplo, los siguientes criterios: "la suficiencia de la información disponible para aquilatar debidamente los hechos y formar juicio sobre el impacto del decreto que se dicte sobre la personalidad y el bienestar del menor; la sustancialidad de los contactos del foro con la controversia; el grado a que el ejercicio de jurisdicción pueda desalentar la multiplicación y prolongación de controversias sobre el asunto y contribuir a crear la estabilidad necesaria; el punto a que se tienda, como se debe tender, a evitar el secuestro unilateral de menores para fines de obtener un decreto de custodia; y el extremo en que se facilite el mayor respeto posible a las determinaciones de otros estados, así como del propio foro." *Marrero,* a la pág. 100.

por su padre o madre no custodio. [9]   Véase, *Thompson v.*
*Thompson,* 484 U.S. 174, 180-181 (1988).   El objetivo
principal del UCCJA fue proveer normas uniformes que
permitieran a los estados que adoptaran el estatuto
determinar si tenían jurisdicción en materia de custodia, y
a la vez obligarlos a reconocer los decretos de otros
estados.   De este modo se pretendió promover la cooperación
interjurisdiccional para el beneficio de los menores.[10]

No obstante, años después de su promulgación, el UCCJA
no había alcanzado los resultados esperados ya que éste no
era de carácter obligatorio; no todos los estados lo
aprobaron y otros, lo aprobaron con modificaciones.   Esto a
su vez promovía interpretaciones conflictivas entre los
estados que lo acogieron, que era precisamente lo que el
estatuto pretendía evitar.   El UCCJA también resultó
deficiente ya que reconoce la jurisdicción concurrente
entre estados, sin establecer ningún tipo de prelación o
preferencia entre jurisdicciones.   Tanto el estado de
residencia del menor como otro estado donde las partes
mantengan contactos significativos, pueden legítimamente
reclamar jurisdicción sobre la materia de custodia, lo que
alentó la práctica conocida como "forum shopping".   *Íbid.*

---

[9] Nótese que la cláusula de entera fe y crédito de la
Constitución de los Estados Unidos, Artículo IV, sec. 1, no
aplica a los decretos de custodia ya que éstos no son de
naturaleza final y firme. *Fernández v. Rodríguez,* 411
N.Y.S.2d 134, 137 (1978), y otros casos allí citados.
[10] Cabe destacar que al día de hoy todos los estados de los
Estados Unidos, el Distrito de Columbia y las Islas
Vírgenes han aprobado sus versiones del UCCJA.

Véase también S.T. Dickens, *The Parental Kidnapping Prevention Act: Application and Interpretation*, 23 J. Family Law 419 (1984-85).[11]

En un esfuerzo de remediar las deficiencias del UCCJA, en el año 1980, el Congreso de los Estados Unidos aprobó el "Parental Kidnapping Prevention Act" (PKPA), 28 U.S.C. sec. 1738A, titulado "Full faith and credit given to child custody determination decrees". Tal y como sugiere su título, el PKPA, cuyas disposiciones se derivan del UCCJA, impone a los estados el deber de otorgar entera fe y crédito, a través de un patrón uniforme, a decretos de custodia de otros estados. Véase L.M. Demelis, *Interstate Child Custody and the Parental Kidnapping Prevention Act: the Continuing Search for a National Standard*, 45 Hastings L.J. 1329 (1994).

El estatuto en su declaración de propósitos, identifica como sus objetivos principales los siguientes: promover la cooperación interestatal; facilitar la

---

[11] Posteriormente se promovió el Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Uniform Laws Annotated, Volumen 9, Parte 1A, págs 649 *et seq.*, en sustitución del UCCJA. El UCCJEA constituyó un intento de revisar y clarificar interpretaciones inconsistentes y ambiguas del UCCJA, en específico aquellas disposiciones relacionadas a la jurisdicción del foro judicial. C. Guzaldo Gamrath, *UCCJEA: A New Approach to Custody Jurisdiction and Interstate Custody and Visitation*, 92 Ill.B.J. 204 (2004). Esta legislación incorpora procedimientos más expeditos y eficientes para asistir a los estados en hacer valer sus decretos de custodia y derechos de visita. Además, incluye estipulaciones dirigidas a proteger las víctimas de violencia doméstica, de conformidad con la ley federal Violence Against Women Act (VAWA), 18 U.S.C. sec. 2265.

ejecución de los decretos de custodia de otros estados;

prevenir la competencia y el conflicto interjurisdiccional;

y frenar la remoción unilateral de los menores con el

propósito de obtener decretos favorables de otros foros.

Por mandato expreso, el cumplimiento con las disposiciones

de la ley es obligatorio para todos los estados, el Estado

Libre Asociado de Puerto Rico y los territorios de los

Estados Unidos.  28 U.S.C. sec. 1738A(b)(8).

En términos generales, bajo el PKPA cuando el foro

original haya actuado de acuerdo a las disposiciones del

estatuto, **y este foro continúe teniendo jurisdicción sobre**

**la materia**, la ley ordena a los tribunales de otros estados

o jurisdicciones a reconocerle a ese decreto original

entera fe y crédito.  28 U.S.C sec. 1738A(a).  Al igual que

el UCCJA, el PKPA aplica a decretos de custodia y a órdenes

de visita.  Sobre este particular citamos *in extenso* del

PKPA:

> §1738A
>
> (c) Una determinación de custodia o de derecho de
> visita hecha por un tribunal de un estado es
> consistente con los requisitos de esta sección
> solamente si--
>
> (1) dicho tribunal tiene jurisdicción bajo las
> leyes de su estado; y
>
> (2) se cumple con una de las siguientes
> condiciones:
>
> > A. Ese estado (i) es el **estado de residencia** del
> > menor a la fecha en que comenzaron los
> > procedimientos, o (ii) **ha sido el estado de**
> > **residencia del menor seis meses antes de la**
> > **fecha en que comenzaron los procedimientos** y el
> > menor se encuentra fuera del estado porque ha

sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;

B. (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor el tribunal de dicho estado asume jurisdicción debido a que (I)el menor y sus padres, o el menor y al menos uno de los litigantes, tiene **contactos significativos** con el estado, más allá de la mera presencia física en el mismo; y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;

C. el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;

D.(i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; **o**

**E.    el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección.**

28 U.S.C. sec. 1738A(c). (Traducción y énfasis nuestro).

Surge de la anterior disposición que el PKPA, al igual que el UCCJA, reconoce cuatro bases jurisdiccionales. Estas son: jurisdicción del estado de residencia del menor, jurisdicción por contactos significativos con el foro, jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, y jurisdicción para situaciones de emergencia. Sin embargo, donde el UCCJA admite la jurisdicción concurrente, el PKPA establece un esquema

jerárquico de preferencia jurisdiccional. Bajo este esquema, claramente se favorece al estado de residencia del menor como aquel que merece entera fe y crédito de los estados y las demás jurisdicciones; mientras que sólo es posible asumir jurisdicción por contactos significativos cuando no es viable identificar el estado de residencia del menor. B.A. Atwood, *Child Custody Jurisdiction and Territoriality,* 52 Ohio St.L.J. 369 (1991); *Atkins v. Atkins,* 823 S.W.2d 816 (Ark. 1992); *Williams v. Williams,* 430 S.E.2d 277 (N.C. 1993). En Puerto Rico, *Ortega v. Morales,* 131 D.P.R. 783 (1992).

Nótese que el término "estado de residencia del menor", significa aquel estado o jurisdicción donde un niño ha vivido con uno o ambos padres, o con un tutor, **al menos por seis meses consecutivos inmediatamente antes de la fecha en que se inicien los procedimientos de custodia o de fijación de derecho de visitas.** 28 U.S.C. sec. 1738A(b)(4).

El PKPA le reconoce expresamente **jurisdicción continua** al estado que emitió un decreto original de custodia para hacer valer y revisar su determinación original, al disponer lo siguiente:

> (d) La jurisdicción de un tribunal de un estado que haya emitido una determinación de custodia de menores o de derechos de visita, consistentemente con las disposiciones de esta sección, continúa mientras se cumplan los requisitos de la sección (c)(1) y ese estado se mantenga como estado de residencia del menor o de alguno de los litigantes.

28 U.S.C. sec. 1738A(d). (Traducción nuestra).

Por lo tanto, el PKPA establece tres requisitos necesarios para la jurisdicción continua, a saber: **un decreto de custodia original consistente con las disposiciones del estatuto; que el foro original mantenga jurisdicción bajo sus propias leyes; y que dicho foro continúe siendo el lugar de residencia legal del menor o al menos una de las partes.** Cumplidos los requisitos de la cláusula de continuidad, es el estado o la jurisdicción que emitió el decreto judicial original, cuya determinación de custodia recibirá entera fe y crédito. A.B. Goldstein, *The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act,* 25 U.C. Davis L. Rev. 845 (1992).[12]

**Es decir, si bien el PKPA da preferencia jurisdiccional al estado de residencia del menor para atender cuestiones de custodia de menores, la jurisdicción continua es el criterio rector ante la existencia de un decreto válido.** Esto refuerza la protección y estabilidad que brinda el PKPA a los decretos de custodia. M.E. Moraza Choizne, *Juridical Solutions in the U.S.A. for Parental Kidnapping in Child Custody Cases,* 24 Rev. Jur. U.I.P.R. 309, 319 (1990). ("In these actions, the jurisdiccional

---

[12] Para interpretación de la cláusula de continuidad veáse entre otros *Mitchell v. Mitchell,* 437 So.2d 122 (Ala. 1982); *Delk v. González,* 658 N.E.2d 681 (Mass. 1995); *Glanzner v. State, Dep't of Social Services,* 835 S.W.2d 386 (Mo. 1992).

basis [providing continuous jurisdiction] is hierarchically superior even to home state jurisdiction.")[13]

A manera de excepción, el PKPA reconoce a los tribunales autoridad para modificar una determinación de custodia emitida originalmente por otro estado, siempre y cuando el estado que pretende modificar el decreto ostente jurisdicción para tomar determinaciones de custodia sobre el menor; y el foro original haya perdido jurisdicción para modificar el decreto, o haya renunciado a ella. 28 U.S.C. sec. 1738A(f). La pérdida de jurisdicción del foro original se analiza a base de los parámetros jurisdiccionales del propio estatuto, según el esquema jerárquico de la sec. 1738A(c)[14]. *Crump v. Crump,* 821 P.2d 1172 (Utah 1991). Como norma general, los tribunales deberán celebrar una vista especial para determinar si el foro mantiene jurisdicción, o si por el contrario, la ha perdido. *Schwartz v. Schwartz,* 428 S.E.2d 748 (1993).

La ley declara que pendiente otro procedimiento de custodia sobre ese menor en otro estado, los tribunales

---

[13] Para opiniones consistentes con la interpretación anterior véase: *Fuerstenberg v. Fuersternberg,* 591 N.W.2d 798 (S.D. 1999); *Barndt v. Barndt,* 580 A.2d 320 (Pa. 1990); *Moore v. Pérez,* 428 So.2d 113 (Ala.App. 1983); *Dobbins v. Maner,* 517 So.2d 619 (Ala. 1987); *O'Daniel v. Walter*, 686 S.W.2d 805 (Ark. 1985); *Clark v. Atkins*, 489 N.E.2d 90 (Ind. 1986); *In re McBride,* 469 So.2d 645 (Ala. 1985).

[14] Además de los factores enumerados en la propia ley, los tribunales han considerado otra serie de circunstancias relacionadas al bienestar del menor, como por ejemplo que el foro original no haya dado el peso debido a alegaciones de maltrato de parte del progenitor que continúa residiendo en el foro, *In re Thorensen,* 730 P.2d 1380 (Wash. 1987); o que se pruebe que el progenitor residente sea adicto a drogas o alcohólico, *Serna v. Salazar,* 651 P.2d 1292 (N.M. 1982).

deberán abstenerse de asumir jurisdicción, siempre que el foro original esté ejerciendo jurisdicción de manera compatible con las disposiciones del estatuto. 28 U.S.C. sec. 1738A(g). De actuar el foro original de manera compatible con el PKPA, el segundo estado al que se le reclama jurisdicción queda impedido de asumirla, o en todo caso, debe declinar ejercerla. *P.A.T v. D.B.*, 638 So.2d 905 (Ala. 1994). En igual sentido, *In re Marriage of Hopson,* 110 Cal.App.3d 884 (1980); *Owens v. Huffman,* 481 So.2d 231 (Miss. 1985); y en el estado de Florida, *Johnson v. Denton,* 542 So.2d 447 (Fla. 1989).

En casos en donde esté en controversia el derecho de visita --ya sea para limitar o acrecentar el derecho-- se ha resuelto que el estado de residencia del progenitor no custodio seguramente tendrá mejor evidencia para tomar la determinación, a no ser que las razones para la modificación se relacionen precisamente a las actividades y la vida diaria del menor en su estado de residencia. *DeLee v. Koss,* 430 So.2d 196 (La. 1983).

Como ya vimos, el PKPA aplica expresamente a decretos de custodia emitidos válidamente. Se diseñó principalmente para proteger a los tribunales estatales de ataques de tribunales de otros estados sobre la validez de sus decretos de custodia y derechos de visita; o ante intentos de otros tribunales de modificar los mismos. L.M. Demelis, *op cit.* Todo con el claro propósito de prevenir la competencia y evitar los conflictos de custodia entre los

estados con jurisdicción sobre la materia. Siendo así, **el PKPA no aplica ante la falta de conflicto interjurisdiccional o cuando sólo hay un foro involucrado con los procedimientos de custodia de un menor**. Ausente un segundo decreto de custodia o una acción de custodia pendiente en otro foro, no es bajo el PKPA sino bajo las leyes "estatales" que se dilucidan los asuntos de custodia de menores. Veáse *Padzer v. Padzer,* 556 N.Y.S.2d 427 (1990); *Erler v. Erler,* 862 P.2d 12 (Mont. 1993).

**C.**

En Puerto Rico aplica el PKPA por mandato expreso federal por cuanto los tribunales de Puerto Rico deben otorgar entera fe y crédito a los decretos de custodia de otros foros de los Estados Unidos, en aquellos casos de custodia que cumplan con los parámetros de dicha ley federal, y se haya observado propiamente el debido proceso de ley. Veáse *Pérez Pascual v. Vega Rodríguez,* 124 D.P.R. 529 (1989); *Ortega v. Morales, supra; Perron v. Corretjer,* 113 D.P.R. 593 (1982); *Perron v. Miranda*, 114 D.P.R. 25 (1983).

De igual modo, los estados de los Estados Unidos están obligados por el PKPA a reconocer los decretos de custodia emitidos originalmente en el Estado Libre Asociado de Puerto Rico, siempre que éstos se ajusten a las disposiciones del PKPA. En *In re Marriage of Zierenberg,* 11 Cal.App.4th 1436 (1992), el tribunal de apelaciones de California determinó que bajo los parámetros del PKPA era

Puerto Rico, y no California, el estado de residencia de los menores al momento de emitir el decreto de custodia; ya que Puerto Rico tenía jurisdicción bajo sus propias leyes y no la había renunciado. El tribunal resolvió que Puerto Rico mantuvo jurisdicción continua para decretar y modificar órdenes de custodia.

Así también en *Herrero v. Matas,* 447 So.2d 335 (Fla. 1984) un tribunal del Condado de Dade, Florida, que era el estado de residencia de la menor, asumió jurisdicción ante una solicitud de la madre para modificar un decreto de custodia emitido originalmente en Puerto Rico. Existía en ese momento un procedimiento de custodia pendiente en Puerto Rico. El foro apelativo de Florida revocó. Resolvió que Puerto Rico había retenido control de todos los aspectos del litigio, se había mantenido activo en la disputa de custodia, y había actuado en "conformidad sustancial" con el UCCJA, por cuanto el tribunal del Condado de Dade había asumido jurisdicción indebidamente. En igual sentido *Sterzinger v. Efron,* 534 So.2d 798 (Fla. 1988); *Izmery v. Izmery,* 559 So.2d 1211 (Fla. 1990).

A *contrario sensu*, en *Fernández v. Rodríguez*, 411 N.Y.S.2d 134 (1978), la corte suprema del estado de Nueva York resolvió que el decreto de custodia original emitido por el tribunal de Puerto Rico no se ajustó a los estándares del UCCJA[15], por cuanto rechazó dar entera fe y

---

[15] El tribunal de Nueva York determinó que el dictamen de Puerto Rico no fue consistente con los parámetros del UCCJA

crédito -- reconocer y hacer valer-- al dictamen emitido en Puerto Rico.

**D.**

Analizada la legislación federal Parental Kidnapping Prevention Act --su trayectoria y sus propósitos-- y la jurisprudencia que la ha interpretado, entendemos que, aun existiendo otro estado o jurisdicción que constituya el estado de residencia del menor, un tribunal de Puerto Rico mantiene jurisdicción continua en conformidad con el PKPA para emitir una orden de custodia **cuando el tribunal en Puerto Rico haya actuado con jurisdicción de acuerdo a las disposiciones de la ley federal al emitir la determinación original de custodia.** El análisis es el siguiente: primero, corresponde evaluar si el tribunal de Puerto Rico emitió el decreto original de custodia de manera consistente a las disposiciones del PKPA; es decir, ejerciendo válidamente jurisdicción al amparo de nuestro propio derecho y además, en cumplimiento con los requerimientos jurisdiccionales de la Sección 1738A(c).

Segundo, resulta necesario considerar si el tribunal de Puerto Rico mantiene jurisdicción en materia de custodia de menores bajo nuestro propio derecho. Tercero, se requiere que al menos una de las partes continúe residiendo en Puerto Rico. De cumplirse cabalmente estos criterios, será forzoso concluir que los tribunales de Puerto Rico

por consideraciones de debido proceso de ley y además porque no se cumplían con los requisitos jurisdiccionales.

mantienen jurisdicción, bajo la cláusula de continuidad del PKPA, 28 U.S.C. sec. 1378A(d), para ordenar el cumplimiento ("enforcement") o para modificar sus decretos de custodia.

**IV**

Con el anterior trasfondo doctrinal, analicemos los hechos del caso.

La controversia medular que nos ocupa es si el Tribunal de Primera Instancia retuvo jurisdicción, luego de decretado el divorcio de los comparecientes para emitir la orden que le ha solicitado el padre no custodio para hacer valer su derecho de visita. El Tribunal de Apelaciones erró al resolver bajo el PKPA cuando ante dicho foro no se había planteado conflicto jurisdiccional alguno, toda vez que no fue informado del pleito presentado por la recurrida ante un tribunal en la Florida.

Ahora bien, en su comparecencia ante nosotros, la recurrida nos informó del pleito que presentó ante los tribunales en Florida por lo que, en estos momentos, existen dos jurisdicciones donde el asunto de la custodia de la menor está pendiente. Por ende, es de aplicación la legislación federal PKPA y procede que resolvamos de acuerdo a sus postulados.

Lo cierto es que el Tribunal de Apelaciones erró en su interpretación del PKPA. El tribunal en su sentencia reconoció que el PKPA favorece un esquema de jurisdicción continua, mas no discutió la disposición estatutaria que así lo reconoce. Más bien, centralizó su discusión

alrededor de la cláusula del estado de residencia del menor. Por el contrario, procedía evaluar detenidamente nuestra jurisdicción conforme a un análisis integrado del estatuto federal, sin limitarse el análisis a sólo una de sus cláusulas.[16] Veamos.

Según hemos indicado, precisa determinar si, por ser Puerto Rico el foro que emitió el decreto original de custodia en este caso, bajo la cláusula de continuidad del PKPA, conserva jurisdicción para emitir una orden relacionada a la determinación original de custodia. De acuerdo al análisis de jurisdicción continua, corresponde resolver, como cuestión de umbral, si el tribunal de Puerto Rico actuó consistentemente con el PKPA al emitir el decreto original de custodia en el año 1997.

Es decir, debemos determinar si al momento del decreto original era Puerto Rico el estado de residencia de la menor o en su defecto, que no hubiera en ese momento otro foro que cualificara como estado de residencia de la menor, haciéndose posible la jurisdicción por contactos significativos con el foro. Ello exige que se determine si en ese momento la menor llevaba al menos seis meses residiendo ininterrumpidamente en Puerto Rico; o, si por el contrario, la menor llevaba ese tiempo o más, residiendo en la Florida. De ser este último el caso, entonces, para

---

[16] En *Ortega v. Morales Ortega, supra,* no examinamos la cláusula de continuidad del PKPA como lo hacemos en esta ocasión. Allí, centramos nuestra discusión en la cláusula de residencia del menor del estatuto federal y resolvimos a base de ello.

efectos del PKAP el decreto original no se conformó a sus requerimientos.

Al revisar el récord ante nuestra consideración nos percatamos que el mismo no contiene información sobre este asunto toda vez que no ha sido tema de análisis ni por el tribunal de instancia o el de apelaciones, como tampoco por las partes involucradas en esta controversia. A base de la información que consta en autos, no se puede concluir con certeza cuál era el lugar de residencia de la menor al fijarse las relaciones paterno filiales. Ello es imprescindible para determinar, conforme los parámetros del PKPA, si los tribunales de Puerto Rico mantienen jurisdicción continua para modificar su dictamen original.

Este es un asunto que, en última instancia, debe dilucidarse en una vista evidenciaria en la que las partes aporten la prueba necesaria sobre sus respectivas residencias al momento de decretarse el divorcio y fijarse las relaciones paterno filiales. Solo de esta forma se podrá atender la controversia jurisdiccional plantada en este caso. A esos efectos, el caso debe ser devuelto al Tribunal de Primera Instancia para que celebre la correspondiente vista acorde a lo aquí dispuesto.

De resolverse que Puerto Rico actuó con jurisdicción de acuerdo al PKPA para emitir el decreto original; es claro que los demás requisitos para la jurisdicción continua están debidamente atendidos. Esto es así ya que mantenemos jurisdicción bajo nuestro derecho y al menos una

de las partes mantiene residencia en Puerto Rico. Procedería entonces que el foro primario ejerciera su jurisdicción conforme los mejores intereses de la menor.

### V

Nos resta expresarnos sobre el segundo señalamiento de error traído ante nuestra consideración. El peticionario nos pide que se enmiende el dictamen original a los efectos de que se ejerza la patria potestad de manera compartida entre ambos progenitores. La Regla 49.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap.III R.49.1, gobierna en cuanto a la corrección de errores incurridos debido a inadvertencia u omisión. Esta regla faculta a los tribunales a corregir en cualquier momento los errores de forma en una sentencia. Sobre el procedimiento, denominado enmienda *nunc pro tunc*, la regla dispone que:

> Los errores de forma en las sentencias, órdenes u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordenare. Durante la tramitación de una apelación o un recurso de certiorari, podrán corregirse dichos errores antes de elevar el expediente al tribunal de apelación y, posteriormente, sólo podrán corregirse con permiso del tribunal de apelación.

Adviértase que, independientemente de la facultad que le es conferida estatutariamente a los tribunales mediante la referida regla, para efectuar enmiendas *nunc pro tunc*, éstos tienen un poder inherente para corregir en cualquier momento sus expedientes de manera tal que éstos reflejen la

realidad; aun cuando se trate de sentencias que ya hayan advenido finales. *Sucn. Rosario v. Sucn. Cortijo,* 83 D.P.R. 678 (1961); *Security Insurance Co. v. Tribunal Superior,* 101 D.P.R. 191 (1973).

Hemos avalado como errores de forma las correcciones de errores del secretario del tribunal al anotar una sentencia, *Pueblo v. Miranda,* 56 D.P.R. 601 (1940); añadir a una sentencia remedios adicionales derivados del derecho originalmente concedido, *Concepción v. Latoni,* 63 D.P.R. 693 (1944)[17]; añadir o modificar una descripción de un bien en una sentencia, *Cintrón v. Hartman & Co.,* 43 D.P.R. 179 (1932); y conceder costas cuando éstas se reconocen en la opinión, *Lawton v. Rodríguez,* 41 D.P.R. 447 (1930). Siempre que el expediente sustente el remedio, la omisión en concederlo resulta subsanable mediante una enmienda *nunc pro tunc*, con el efecto práctico que la misma se retrotrae. *Coriano Hernández v. Kmart,* res. el 29 de junio de 2001, 2001 T.S.P.R. 97, 157 D.P.R. ___.

El criterio principal es que la cuestión a ser enmendada no conlleve la alteración de un derecho sustantivo, sino la corrección de una mera inadvertencia. En cambio, ante una cuestión de interpretación de ley --aun tratándose de un cálculo matemático-- no procede la enmienda *nunc pro tunc*. *Banco Popular v. Tribunal Superior,* 82 D.P.R. 242 (1961). En esta situación se considera un error de derecho sustantivo y no error de

---

[17] Revocado en cuanto a otro punto de derecho.

forma, y no podrá ser corregido por el tribunal una vez la sentencia advenga firme. *García López v. Méndez García,* 102 D.P.R. 383.

De acuerdo a los parámetros anteriores, entendemos que la solicitud de enmienda *nunc pro tunc* para corregir la sentencia de divorcio a que refleje que la patria potestad será compartida no procede en derecho. No se trata de una enmienda de forma, toda vez que lo solicitado afecta los derechos sustantivos de las partes. Por el contrario, esta enmienda tenía que haberse solicitado oportunamente, antes que la sentencia de divorcio, emitida en el 1997, adviniera final y firme. No procede una solicitud de enmienda a estos efectos a más de ocho (8) años luego de haberse emitido el dictamen.

En vista de la anterior discusión estamos conformes con la sentencia hoy dictada, la cual revoca al Tribunal de Apelaciones y devuelve el caso al Tribunal de Primera Instancia para la celebración de una vista en la cual se habrá de determinar si, al momento de decretado el divorcio de las partes en este caso y fijarse las relaciones paterno filiales, Puerto Rico era el estado de residencia de la menor, o, que no hubiese en ese momento, otro foro que pudiese cualificar como tal.

Anabelle Rodríguez Rodríguez
Juez Asociada